# ARKANSAS *v.* SANDERS

No. 77–1497.  Argued February 27, 1979—Decided June 20, 1979

POWELL, J., delivered the opinion of the Court, in which BRENNAN, STEWART, WHITE, and MARSHALL, JJ., joined. BURGER, C. J., filed an opinion concurring in the judgment, in which STEVENS, J., joined, *post*, p. 766. BLACKMUN, J., filed a dissenting opinion, in which REHNQUIST, J., joined, *post*, p. 768.

*Joseph H. Purvis,* Deputy Attorney General of Arkansas, argued the cause for petitioner *pro hac vice.* With him on the briefs were *Steve Clark,* Attorney General, and *Bill Clinton,* former Attorney General.

*Jack T. Lassiter,* by appointment of the Court, 439 U. S. 1062, argued the cause and filed a brief for respondent.*

MR. JUSTICE POWELL delivered the opinion of the Court.

This case presents the question whether, in the absence of exigent circumstances, police are required to obtain a warrant before searching luggage taken from an automobile properly stopped and searched for contraband. We took this case by writ of certiorari to the Supreme Court of Arkansas to resolve some apparent misunderstanding as to the application of our decision in *United States* v. *Chadwick,* 433 U. S. 1 (1977), to warrantless searches of luggage seized from automobiles.[1]

---

*Fred E. Inbau, Frank Carrington, Wayne W. Schmidt,* and *James P. Costello* filed a brief for Americans for Effective Law Enforcement, Inc., as *amicus curiae* urging reversal.

[1] Compare *United States* v. *Finnegan,* 568 F. 2d 637, 641–642 (CA9 1977), with *United States* v. *Stevie,* 582 F. 2d 1175, 1178–1179 (CA8 1978) (en banc).

# I

On April 23, 1976, Officer David Isom of the Little Rock, Ark., Police Department received word from an informant that at 4:35 that afternoon respondent would arrive aboard an American Airlines flight at gate No. 1 of the Municipal Airport of Little Rock. According to the informant, respondent would be carrying a green suitcase containing marihuana. Both Isom and the informant knew respondent well, as in January 1976 the informant had given the Little Rock Police Department information that had led to respondent's arrest and conviction for possession of marihuana. Acting on the tip, Officer Isom and two other police officers placed the airport under surveillance. As the informant had predicted, respondent duly arrived at gate No. 1. The police watched as respondent deposited some hand luggage in a waiting taxicab, returned to the baggage claim area, and met a man whom police subsequently identified as David Rambo. While Rambo waited, respondent retrieved from the airline baggage service a green suitcase matching that described by the informant. Respondent gave this suitcase to his companion and went outside, where he entered the taxi into which he had put his luggage. Rambo waited a short while in the airport and then joined respondent in the taxi, after placing the green suitcase in the trunk of the vehicle.

When respondent's taxi drove away carrying respondent, Rambo, and the suitcase, Officer Isom and one of his fellow officers gave pursuit and, with the help of a patrol car, stopped the vehicle several blocks from the airport. At the request of the police, the taxi driver opened the trunk of his vehicle, where the officers found the green suitcase. Without asking the permission of either respondent or Rambo, the police opened the unlocked suitcase and discovered what proved to be 9.3 pounds of marihuana packaged in 10 plastic bags.

On October 14, 1976, respondent and Rambo were charged with possession of marihuana with intent to deliver in viola-

tion of Ark. Stat. Ann. § 82–2617 (1976).[2] Before trial, respondent moved to suppress the evidence obtained from the suitcase, contending that the search violated his rights under the Fourth and Fourteenth Amendments. The trial court held a hearing on January 31, 1977, and denied the suppression motion without explanation. After respondent's conviction by a jury on February 3, 1977, he was sentenced to 10 years in prison and was fined $15,000.

On appeal the Supreme Court of Arkansas reversed respondent's conviction, ruling that the trial court should have suppressed the marihuana because it was obtained through an unlawful search of the suitcase. 262 Ark. 595, 559 S. W. 2d 704 (1977). Relying upon *United States* v. *Chadwick, supra,* and *Coolidge* v. *New Hampshire,* 403 U. S. 443 (1971), the court concluded that a warrantless search generally must be supported by "probable cause coupled with exigent circumstances." 262 Ark., at 599, 559 S. W. 2d, at 706. In the present case, the court found there was ample probable cause for the police officers' belief that contraband was contained in the suitcase they searched. The court found to be wholly lacking, however, any exigent circumstance justifying the officers' failure to secure a warrant for the search of the luggage. With the police in control of the automobile and its occupants, there was no danger that the suitcase and its contents would be rendered unavailable to due legal process. The court concluded, therefore, that there was "nothing in this set of circumstances that would lend credence to an assertion of impracticality in obtaining a search warrant." *Id.,* at 600, 559 S. W. 2d, at 706.[3]

---

[2] In addition to the marihuana found in the suitcase, police officers found one ounce of heroin hidden in their patrol car after transporting Rambo to police headquarters. Accordingly, Rambo also was charged with possession of heroin with intent to deliver. Immediately before trial on both counts, the court severed the heroin-possession count for later trial.

[3] "With the suitcase safely immobilized, it was unreasonable to under-

## II

Although the general principles applicable to claims of Fourth Amendment violations are well settled, litigation over requests for suppression of highly relevant evidence continues to occupy much of the attention of courts at all levels of the state and federal judiciary. Courts and law enforcement officials often find it difficult to discern the proper application of these principles to individual cases, because the circumstances giving rise to suppression requests can vary almost infinitely. Moreover, an apparently small difference in the factual situation frequently is viewed as a controlling difference in determining Fourth Amendment rights. The present case presents an example. Only two Terms ago, we held that a locked footlocker could not lawfully be searched without a warrant, even though it had been loaded into the trunk of an automobile parked at a curb. *United States* v. *Chadwick,* 433 U. S. 1 (1977). In earlier cases, on the other hand, the Court sustained the constitutionality of warrantless searches of automobiles and their contents under what has become known as the "automobile exception" to the warrant requirement. See, *e. g., Chambers* v. *Maroney,* 399 U. S. 42 (1970); *Carroll* v. *United States,* 267 U. S. 132 (1925). We thus are presented with the task of determining whether the warrantless search of respondent's suitcase falls on the *Chadwick* or the *Chambers/Carroll* side of the Fourth Amendment line. Although in a sense this is a line-drawing process, it must be guided by established principles.

We commence with a summary of these principles. The Fourth Amendment protects the privacy and security of per-

take the additional and greater intrusion of a search without a warrant." 262 Ark., at 601, 559 S. W. 2d, at 707. The court also rejected the State's contention that luggage is entitled to a lesser protection against warrantless searches than are other private areas, such as homes. It noted that suitcases, unlike automobiles, customarily are the repositories for personal effects.

sons in two important ways. First, it guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." In addition, this Court has interpreted the Amendment to include the requirement that normally searches of private property be performed pursuant to a search warrant issued in compliance with the Warrant Clause.[4] See, e. g., *Mincey* v. *Arizona,* 437 U. S. 385, 390 (1978); *United States* v. *Chadwick, supra,* at 9; *United States* v. *United States District Court,* 407 U. S. 297, 317 (1972); *Katz* v. *United States,* 389 U. S. 347, 357 (1967); *Agnello* v. *United States,* 269 U. S. 20, 33 (1925). In the ordinary case, therefore, a search of private property must be both reasonable and pursuant to a properly issued search warrant. The mere reasonableness of a search, assessed in the light of the surrounding circumstances, is not a substitute for the judicial warrant required under the Fourth Amendment. See *United States* v. *United States District Court, supra.* As the Court said in *Coolidge* v. *New Hampshire, supra,* at 481:

"The warrant requirement has been a valued part of our constitutional law for decades, and it has determined the result in scores and scores of cases in courts all over this country. It is not an inconvenience to be somehow 'weighed' against the claims of police efficiency. It is, or should be, an important working part of our machinery of government, operating as a matter of course to check the 'well-intentioned but mistakenly overzealous executive officers' who are a part of any system of law enforcement."

---

[4] The Warrant Clause of the Fourth Amendment provides that "no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." The Fourth Amendment has been made fully applicable to the States by the Fourteenth Amendment. See *Mapp* v. *Ohio,* 367 U. S. 643 (1961); *Wolf* v. *Colorado,* 338 U. S. 25 (1949). In this opinion we refer to the Fourth Amendment as it so applies to the State of Arkansas.

The prominent place the warrant requirement is given in our decisions reflects the "basic constitutional doctrine that individual freedoms will best be preserved through a separation of powers and division of functions among the different branches and levels of Government." *United States* v. *United States District Court, supra,* at 317. By requiring that conclusions concerning probable cause and the scope of a search "be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime," *Johnson* v. *United States,* 333 U. S. 10, 14 (1948), we minimize the risk of unreasonable assertions of executive authority. See *McDonald* v. *United States,* 335 U. S. 451, 455–456 (1948).[5]

Nonetheless, there are some exceptions to the warrant requirement. These have been established where it was concluded that the public interest required some flexibility in the application of the general rule that a valid warrant is a prerequisite for a search. See *United States* v. *Martinez-Fuerte,* 428 U. S. 543, 555 (1976). Thus, a few "jealously and carefully drawn" [6] exceptions provide for those cases where the societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate. See *United States* v. *United States District Court, supra,* at 318. But because each exception to the warrant requirement invariably impinges to some extent on the protective purpose of

---

[5] The need for a carefully drawn, limited warrant for searches of private premises was the product in large part of the colonists' resentment of the writs of assistance to which they were subjected by the English. See *United States* v. *Chadwick,* 433 U. S. 1, 8 (1977); J. Landynski, Search and Seizure and the Supreme Court 19 (1966); N. Lasson, The History and Development of the Fourth Amendment to the United States Constitution 51–78 (1937). Mr. Justice Frankfurter went so far as to suggest that abuses of the writs of assistance were "so deeply felt by the Colonies as to be one of the potent causes of the Revolution." *United States* v. *Rabinowitz,* 339 U. S. 56, 69 (1950) (dissenting opinion).

[6] *Jones* v. *United States,* 357 U. S. 493, 499 (1958).

the Fourth Amendment, the few situations in which a search may be conducted in the absence of a warrant have been carefully delineated and "the burden is on those seeking the exemption to show the need for it." *United States* v. *Jeffers,* 342 U. S. 48, 51 (1951). See *Chimel* v. *California,* 395 U. S. 752, 762 (1969); *Katz* v. *United States, supra,* at 357. Moreover, we have limited the reach of each exception to that which is necessary to accommodate the identified needs of society. See *Mincey* v. *Arizona, supra,* at 393; *United States* v. *Chadwick,* 433 U. S., at 15; *Coolidge* v. *New Hampshire,* 403 U. S., at 455.

One of the circumstances in which the Constitution does not require a search warrant is when the police stop an automobile on the street or highway because they have probable cause to believe it contains contraband or evidence of a crime. See *United States* v. *Martinez-Fuerte, supra,* at 561–562; *United States* v. *Ortiz,* 422 U. S. 891, 896 (1975); *Texas* v. *White,* 423 U. S. 67, 68 (1975). As the Court said in *Carroll* v. *United States,* 267 U. S., at 153:

> "[T]he guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the Government, as recognizing a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant . . . ." [7]

---

[7] The willingness of courts to excuse the absence of a warrant where spontaneous searches are required of a vehicle on the road has led to what is called the "automobile exception" to the warrant requirement, although the exception does not invariably apply whenever automobiles are searched. See, *e. g., Coolidge* v. *New Hampshire,* 403 U. S. 443, 461–462 (1971) ("The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears"). See generally Moylan, The Automobile Exception: What it is and What it is not—A Rationale in Search of a Clearer Label, 27 Mercer L. Rev. 987 (1976).

There are essentially two reasons for the distinction between automobiles and other private property. First, as the Court repeatedly has recognized, the inherent mobility of automobiles often makes it impracticable to obtain a warrant. See, e. g., *United States* v. *Chadwick, supra,* at 12; *Chambers* v. *Maroney,* 399 U. S., at 49–50; *Carroll* v. *United States, supra.* In addition, the configuration, use, and regulation of automobiles often may dilute the reasonable expectation of privacy that exists with respect to differently situated property. See *Rakas* v. *Illinois,* 439 U. S. 128, 155 (1978) (POWELL, J., concurring); *United States* v. *Chadwick, supra; South Dakota* v. *Opperman,* 428 U. S. 364, 368 (1978); *Cardwell* v. *Lewis,* 417 U. S. 583, 590 (1974) (plurality opinion); *Cady* v. *Dombrowski,* 413 U. S. 433, 441–442 (1973); *Almeida-Sanchez* v. *United States,* 413 U. S. 266, 279 (1973) (POWELL, J., concurring).

## III

In the present case, the State argues that the warrantless search of respondent's suitcase was proper under *Carroll* and its progeny.[8] The police acted properly—indeed commendably—in apprehending respondent and his luggage. They had ample probable cause to believe that respondent's green suitcase contained marihuana. A previously reliable informant had provided a detailed account of respondent's expected arrival at the Little Rock Airport, which account proved to be accurate in every detail, including the color of the suitcase in which respondent would be carrying the marihuana. Having probable cause to believe that contraband was being driven away in the taxi, the police were justified in stopping the vehicle, searching it on the spot, and seizing the suitcase they suspected contained contraband. See *Chambers* v. *Maroney, supra,* at 52. At oral argument, respondent conceded that the

---

[8] Respondent concedes that the suitcase was his property, see Brief for Respondent 3, and so there is no question of his standing to challenge the search. See *Simmons* v. *United States,* 390 U. S. 377, 387–388 (1968). Cf. *Rakas* v. *Illinois,* 439 U. S. 128, 148–149 (1978).

stopping of the taxi and the seizure of the suitcase were constitutionally unobjectionable. See Tr. of Oral Arg. 30, 44–46.

The only question, therefore, is whether the police, rather than immediately searching the suitcase without a warrant, should have taken it, along with respondent, to the police station and there obtained a warrant for the search. A lawful search of luggage generally may be performed only pursuant to a warrant. In *Chadwick,* we declined an invitation to extend the *Carroll* exception to all searches of luggage, noting that neither of the two policies supporting warrantless searches of automobiles applies to luggage. Here, as in *Chadwick,* the officers had seized the luggage and had it exclusively within their control at the time of the search. Consequently, "there was not the slightest danger that [the luggage] or its contents could have been removed before a valid search warrant could be obtained." 433 U. S., at 13. And, as we observed in that case, luggage is a common repository for one's personal effects, and therefore is inevitably associated with the expectation of privacy. *Ibid.*

The State argues, nevertheless, that the warrantless search of respondent's suitcase was proper, not because the property searched was luggage, but rather because it was taken from an automobile lawfully stopped and searched on the street. In effect, the State would have us extend *Carroll* to allow warrantless searches of everything found within an automobile, as well as of the vehicle itself. As noted above, the Supreme Court of Arkansas found our decision in *Chadwick* virtually controlling in this case.[9] The State contends, however, that

---

[9] The facts of the two cases are similar in several critical respects. In *Chadwick,* a locked, 200-pound footlocker was searched without a warrant after the police, acting with probable cause, had taken it from the trunk of a parked automobile. In the present case, respondent's comparatively small, unlocked suitcase also had been placed in the trunk of an automobile and was searched without a warrant by police acting upon probable cause. We do not view the difference in the sizes of the footlocker and suitcase as material here; nor did respondent's failure to lock his suitcase alter its

*Chadwick* does not control because in that case the vehicle had remained parked at the curb where the footlocker had been placed in its trunk and that therefore no argument was made that the "automobile exception" was applicable. This Court has not had occasion previously to rule on the constitutionality of a warrantless search of luggage taken from an automobile lawfully stopped. Rather, the decisions to date have involved searches of some integral part of the automobile. See, *e. g., South Dakota* v. *Opperman, supra,* at 366 (glove compartment); *Texas* v. *White,* 423 U. S., at 68 (passenger compartment); *Cady* v. *Dombrowski, supra,* at 437 (trunk); *Chambers* v. *Maroney, supra,* at 44 (concealed compartment under the dashboard); *Carroll* v. *United States,* 267 U. S., at 136 (behind the upholstering of the seats).

We conclude that the State has failed to carry its burden of demonstrating the need for warrantless searches of luggage properly taken from automobiles. A closed suitcase in the trunk of an automobile may be as mobile as the vehicle in which it rides. But as we noted in *Chadwick,* the exigency of mobility must be assessed at the point immediately before the search—after the police have seized the object to be searched and have it securely within their control.[10] See 433 U. S., at 13. Once police have seized a suitcase, as they did here, the extent of its mobility is in no way affected by the place from which it was taken.[11] Accordingly, as a general rule there is

---

fundamental character as a repository for personal, private effects. Cf. Note, A Reconsideration of the *Katz* Expectation of Privacy Test, 76 Mich. L. Rev. 154, 170 (1977).

[10] The difficulties in seizing and securing automobiles have led the Court to make special allowances for their search. See n. 14, *infra.*

[11] There may be cases in which the special exigencies of the situation would justify the warrantless search of a suitcase. Cf. *Cady* v. *Dombrowski,* 413 U. S. 433 (1973) (police had reason to suspect automobile trunk contained a weapon). Generally, however, such exigencies will depend upon the probable contents of the luggage and the suspect's access to those contents—not upon whether the luggage is taken from an automobile. In

no greater need for warrantless searches of luggage taken from automobiles than of luggage taken from other places.[12]

Similarly, a suitcase taken from an automobile stopped on the highway is not necessarily attended by any lesser expectation of privacy than is associated with luggage taken from other locations. One is not less inclined to place private, personal possessions in a suitcase merely because the suitcase is to be carried in an automobile rather than transported by other means or temporarily checked or stored. Indeed, the very purpose of a suitcase is to serve as a repository for personal items when one wishes to transport them.[13]  Accord-

---

the present case the State has conceded that there were no special exigencies. See Tr. of Oral Arg. 16.

Nor do we consider the constitutionality of searches of luggage incident to the arrest of its possessor. See, e. g., United States v. Robinson, 414 U. S. 218 (1973). The State has not argued that respondent's suitcase was searched incident to his arrest, and it appears that the bag was not within his "immediate control" at the time of the search.

[12] We have recognized that personal property brought into the country may be searched at the border under circumstances that would not otherwise justify a warrantless search. See United States v. Ramsey, 431 U. S. 606, 616–617 (1977). Arkansas does not assert, however, that the search of respondent's luggage was a border search. Moreover, it may be that the public safety requires luggage to be searched without a warrant in some circumstances—such as when luggage is about to be placed onto an airplane. This presents questions under the Fourth Amendment wholly absent from the present case.

It is beyond question that the police easily could have obtained a warrant to search respondent's bag if they had taken the suitcase to a magistrate. They had probable cause to believe not only that respondent was carrying marihuana, but also that the contraband was contained in the suitcase that they seized. The State argues that under the circumstances of this case inconvenience to all concerned would have been the only result of deferring search of the suitcase until a warrant was obtained. Those in respondent's position who find such inconvenience unacceptable may avoid it simply by consenting to the search.

[13] Not all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment. Thus, some containers (for example a kit of burglar tools or a gun case) by their

ingly, the reasons for not requiring a warrant for the search of an automobile do not apply to searches of personal luggage taken by police from automobiles. We therefore find no justification for the extension of *Carroll* and its progeny to the warrantless search of one's personal luggage merely because it was located in an automobile lawfully stopped by the police.[14]

---

very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance. Similarly, in some cases the contents of a package will be open to "plain view," thereby obviating the need for a warrant. See *Harris* v. *United States*, 390 U. S. 234, 236 (1968) (*per curiam*). There will be difficulties in determining which parcels taken from an automobile require a warrant for their search and which do not. Our decision in this case means only that a warrant generally is required before personal luggage can be searched and that the extent to which the Fourth Amendment applies to containers and other parcels depends not at all upon whether they are seized from an automobile.

[14] We are not persuaded by the State's argument that, under *Chambers* v. *Maroney*, 399 U. S. 42 (1970), if the police were entitled to seize the suitcase, then they were entitled to search it. In *Chambers*, the Court upheld the warrantless search of an automobile stopped on the highway by police who believed that its occupants had robbed a gasoline station a short time before. The .Court recognized that "[a]rguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained . . . ." *Id.*, at 51. Nonetheless, the Court ruled that a warrantless search was permissible, concluding that there was no constitutional difference between the intrusion of seizing and holding the automobile until a warrant could be obtained, on the one hand, and searching the vehicle without a warrant, on the other.

We view, however, the seizure of a suitcase as quite different from the seizure of an automobile. In *Chambers*, if the Court had required seizure and holding of the vehicle, it would have imposed a constitutional requirement upon police departments of all sizes around the country to have available the people and equipment necessary to transport impounded automobiles to some central location until warrants could be secured. Moreover, once seized automobiles were taken from the highway the police would be responsible for providing some appropriate location where they could be kept, with due regard to the safety of the vehicles and their contents, until a magistrate ruled on the application for a warrant. Such

In sum, we hold that the warrant requirement of the Fourth Amendment applies to personal luggage taken from an automobile to the same degree it applies to such luggage in other locations. Thus, insofar as the police are entitled to search such luggage without a warrant, their actions must be justified under some exception to the warrant requirement other than that applicable to automobiles stopped on the highway. Where—as in the present case—the police, without endangering themselves or risking loss of the evidence, lawfully have detained one suspected of criminal activity and secured his suitcase, they should delay the search thereof until after judicial approval has been obtained. In this way, constitutional rights of suspects to prior judicial review of searches will be fully protected.

The judgment of the Arkansas Supreme Court is

*Affirmed.*

MR. CHIEF JUSTICE BURGER, with whom MR. JUSTICE STEVENS joins, concurring in the judgment.

I concur in the Court's judgment but cannot join its unnecessarily broad opinion, which seems to treat this case as if it involved the "automobile" exception to the warrant requirement. It is not such a case.

Because the police officers had probable cause to believe that respondent's green suitcase contained marihuana before it was placed in the trunk of the taxicab, their duty to obtain a search warrant before opening it is clear under *United States* v. *Chadwick,* 433 U. S. 1 (1977). The essence of our holding in *Chadwick* is that there is a legitimate expectation of privacy in the contents of a trunk or suitcase accompanying or being carried by a person; that expectation of privacy is not

---

a constitutional requirement therefore would have imposed severe, even impossible, burdens on many police departments. See Note, Warrantless Searches and Seizures of Automobiles, 87 Harv. L. Rev. 835, 841–842 (1974). No comparable burdens are likely to exist with respect to the seizure of personal luggage.

diminished simply because the owner's arrest occurs in a public place.  Whether arrested in a hotel lobby, an airport, a railroad terminal, or on a public street, as here, the owner has the right to expect that the contents of his luggage will not, without his consent, be exposed on demand of the police.  If not carrying contraband, many persons arrested in such circumstances might choose to consent to a search of their luggage to obviate any delay in securing their release.  But even if wholly innocent, some persons might well prefer not to have the contents of their luggage exposed in a public place.  They may stand on their right to privacy and require a search warrant.  The warrant requirement is not so onerous as to command suspension of Fourth Amendment guarantees once the receptacle involved is securely in the control of the police, as it was here after Sanders' arrest.

The breadth of the Court's opinion and its repeated references to the "automobile" from which respondent's suitcase was seized at the time of his arrest, however, might lead the reader to believe—as the dissenters apparently do—that this case involves the "automobile" exception to the warrant requirement.  See *ante,* at 762–765, and n. 14.  It does not.  Here, as in *Chadwick,* it was the *luggage* being transported by respondent at the time of the arrest, not the automobile in which it was being carried, that was the suspected locus of the contraband.  The relationship between the automobile and the contraband was purely coincidental, as in *Chadwick.*  The fact that the suitcase was resting in the trunk of the automobile at the time of respondent's arrest does not turn this into an "automobile" exception case.  The Court need say no more.

This case simply does not present the question of whether a warrant is required before opening luggage when the police have probable cause to believe contraband is located *somewhere* in the vehicle, but when they do *not* know whether, for example, it is inside a piece of luggage in the trunk, in the glove compartment, or concealed in some part of the car's structure.

I am not sure whether that would be a stronger or weaker case for requiring a warrant to search the suitcase when a warrantless search of the automobile is otherwise permissible. But it seems to me it would be better to await a case in which the question must be decided.

The dissent complains that the Court does not adopt a "clear" rule, presumably one capable of resolving future Fourth Amendment litigation. That is not cause for lament, however desirable it might be to fashion a universal prescription governing the myriad Fourth Amendment cases that might arise. We are construing the Constitution, not writing a statute or a manual for law enforcement officers. My disagreement with the Court's opinion is very different from that of the dissenters. Our institutional practice, based on hard experience, generally has been to refrain from deciding questions not presented by the facts of a case; there are risks in formulating constitutional rules broader than required by the facts to which they are applied. See *Ashwander* v. *TVA,* 297 U. S. 288, 346–348 (1936).

Mr. Justice Blackmun, with whom Mr. Justice Rehnquist joins, dissenting.

This case illustrates the difficulties and confusion that *United States* v. *Chadwick,* 433 U. S. 1 (1977), has spawned and will continue to spawn. For reasons stated in dissent in *Chadwick, id.,* at 18–22 and 24, I continue to feel that that decision was wrong.

The Court today goes farther down the *Chadwick* road, undermines the automobile exception, and, while purporting to clarify the confusion occasioned by *Chadwick,* creates, in my view, only greater difficulties for law enforcement officers, for prosecutors, for those suspected of criminal activity, and, of course, for the courts themselves. Still hanging in limbo, and probably soon to be litigated, are the briefcase, the wallet, the package, the paper bag, and every other kind of container.

I am unpersuaded by the Court's casual statement, *ante,* at 762 n. 9, that *Chadwick* and this case are factually similar "in several critical respects." Even accepting *Chadwick* as good law, which I do not, this, for me, is a different case. In *Chadwick,* the defendants were arrested, and a 200-pound, double-locked footlocker was seized, as the locker was being loaded into the open trunk of a stationary automobile. The relationship between the footlocker and the vehicle was sufficiently attenuated that the Government chose not to argue in this Court that the automobile exception applied. 433 U. S., at 11. Here, in contrast, the Little Rock police stopped a taxicab on a busy highway at the height of late afternoon traffic. They had probable cause to believe the taxi contained contraband narcotics. They opened the trunk, and briefly examined the contents of a small unlocked suitcase inside. The State has vigorously contended throughout these proceedings that the warrantless search of the trunk and the unlocked suitcase was constitutionally permissible under the automobile exception.[1]

I fully agree. If "contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant," *Carroll* v. *United States,* 267 U. S. 132, 153 (1925), then, in my view, luggage and similar containers found in an automobile may be searched for contraband without a warrant. The luggage, like the automobile transporting it, is mobile. And the expectation of privacy in a suitcase found in the car is probably not significantly greater than the expectation of privacy in a locked glove compartment or trunk.

To be sure, as the dissent acknowledged in *Chadwick,* 433 U. S., at 19, impounding the luggage without searching it

---

[1] Since respondent was not formally arrested until after the suitcase was searched, the State does not argue that the suitcase was examined as part of a search incident to custodial arrest. Cf. *United States* v. *Chadwick,* 433 U. S., at 23, and n. 5 (dissenting opinion).

would be a less intrusive alternative than searching it on the spot. But this Court has not distinguished between the "lesser" intrusion of a seizure and the "greater" intrusion of a search, either with respect to automobiles, *Chambers* v. *Maroney*, 399 U. S. 42, 51–52 (1970), or with respect to persons subject to custodial arrest. *United States* v. *Robinson*, 414 U. S. 218, 235 (1973).[2] And I see no reason to impose such a distinction here. Given the significant encroachment on privacy interests entailed by a seizure of personal property, the additional intrusion of a search may well be regarded as incidental. Moreover, the additional protection provided by a search warrant will be minimal. Since the police, by hypothesis, have probable cause to seize the property, we can assume that a warrant will be routinely forthcoming in the overwhelming majority of cases. Finally, the carving out of a special warrant requirement for one type of personal property, but not for others, will impose untoward costs on the criminal justice systems of this country in terms of added delay and uncertainty.[3]

---

[2] The Court stated in *Chambers*, 399 U. S., at 51–52:

"Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the 'lesser' intrusion is permissible until the magistrate authorizes the 'greater.' But which is the 'greater' and which the 'lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant."

[3] The opinion concurring in the judgment would distinguish between a case where there is probable cause to search the car and its contents as a whole, and a case where there is probable cause to search a particular item of luggage within the car. *Ante,* at 767–768. The opinion suggests, without deciding, that the automobile exception might apply in the former case, but not the latter. Surely, however, the intrusion on privacy, and consequently the need for the protection of the Warrant Clause, is, if anything, greater when the police search the entire interior area of the car, including possibly several suitcases, than when they confine their search to a single

The impractical nature of the Court's line-drawing is brought into focus if one places himself in the position of the policeman confronting an automobile that properly has been stopped. In approaching the vehicle and its occupants, the officer must divide the world of personal property into three groups. If there is probable cause to arrest the occupants, then under *Chimel* v. *California*, 395 U. S. 752 (1969), he may search objects within the occupants' immediate control, with or without probable cause. If there is probable cause to search the automobile itself, then under *Carroll* and *Chambers* the entire interior area of the automobile may be searched, with or without a warrant. But under *Chadwick* and the present case, if any suitcase-like object is found in the car outside the immediate control area of the occupants, it cannot be searched, in the absence of exigent circumstances, without a warrant.

The inherent opaqueness of these "principles," in terms of the policies underlying the Fourth and Fourteenth Amendments, and the confusion to be created for all concerned, are readily illustrated. Suppose a portable luggage-container-rack is affixed to the top of the vehicle. Is the arresting officer constitutionally able to open this on the spot, on the theory that it is like the car's trunk, or must he remove it and take it to the station for a warrant, on the theory that it is like the 200-pound footlocker in *Chadwick?* Or suppose there is

suitcase. Moreover, given the easy transferability of articles to and from luggage once it is placed in a vehicle, the police would be entitled to assume that if contraband was not found in the suspect suitcase, it would likely be secreted somewhere else in the car. The possibility the opinion concurring in the judgment would preserve for future decision thus contemplates the following two-step ritual: first, the police would take the targeted suitcase to the station for a search pursuant to a warrant; then, if the contraband was not discovered in the suitcase, they would return for a *warrantless* search of other luggage and compartments of the car. It does not require the adjudication of a future controversy to reject that result.

probable cause to arrest persons seated in the front seat of the automobile, and a suitcase rests on the back seat. Is that suitcase within the area of immediate control, such that the *Chadwick-Sanders* rules do not apply? Or suppose the arresting officer opens the car's trunk and finds that it contains an array of containers—an orange crate, a lunch bucket, an attaché case, a duffelbag, a cardboard box, a backpack, a totebag, and a paper bag. Which of these may be searched immediately, and which are so "personal" that they must be impounded for future search only pursuant to a warrant? The problems of distinguishing between "luggage" and "some integral part of the automobile," *ante,* at 763; between luggage that is within the "immediate control" of the arrestee and luggage that is not; and between "personal luggage" and other "containers and packages" such as those most curiously described *ante,* at 764–765, n. 13, will be legion. The lines that will be drawn will not make much sense in terms of the policies of the Fourth and Fourteenth Amendments. And the heightened possibilities for error will mean that many convictions will be overturned, highly relevant evidence again will be excluded, and guilty persons will be set free in return for little apparent gain in precise and clearly understood constitutional analysis.

In my view, it would be better to adopt a clear-cut rule to the effect that a warrant should not be required to seize and search any personal property found in an automobile that may in turn be seized and searched without a warrant pursuant to *Carroll* and *Chambers.* Cf. *United States* v. *Chadwick,* 433 U. S., at 21–22, and n. 3 (dissenting opinion). Such an approach would simplify the constitutional law of criminal procedure without seriously derogating from the values protected by the Fourth Amendment's prohibition of unreasonable searches and seizures.