THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT A. SPENCER, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DEAN J. HURLEY, Appellant.

Fourth Department, April 8, 1980

### APPEARANCES OF COUNSEL

*Palmiere, Passero & Crimi (Charles F. Crimi* of counsel), for Robert A. Spencer, appellant.

*John J. La Duca* for Dean J. Hurley, appellant.

*Stuart O. Miller, District Attorney (Karen F. McGee* of counsel), for respondent.

### OPINION OF THE COURT

CARDAMONE, J. P.

We must decide whether the warrantless search of a sealed cardboard carton found in the trunk of defendant Spencer's automobile which at the time was being operated by defendant Hurley was illegal under the facts of this case. We believe that it was.

On July 26, 1977 the New York State Police arrested David Hudson for possession of marihuana. During questioning, Hudson revealed that $2,250, which he possessed when arrested, was to be partial payment for 15 pounds of marihuana which he had agreed to purchase from defendant Spencer. In return for "consideration" on the possession charge pending against him, Hudson allowed the police to overhear and to tape record a telephone call he made to Spencer to make arrangements for delivery of the marihuana. Spencer agreed to deliver 10 pounds of marihuana at the Waterloo Interchange of the New York Thruway. Spencer also stated that, since he was ill, he would have Hurley make the delivery for him using his automobile. Hudson described for the troopers Spencer's automobile and was taken by the troopers to the Waterloo Interchange to await Hurley's arrival.

About an hour later, a maroon or dark red Oldsmobile Cutlass exited from the Thruway and stopped a few feet south of the exit ramp. Hudson identified that vehicle as Spencer's and almost immediately a patrol car drove up behind the parked auto. Stepping out of the patrol car, a trooper approached the suspect vehicle on foot, and as he did so, he observed that the driver was seated, with the engine running, looking at a map. When the trooper asked the driver if he was lost, the driver replied that he was, and upon request, he produced his license and the auto's registration. The license bore the name of Dean Hurley, and the registration had been issued to Robert Spencer.

The trooper walked to the front of the car to check the registration number against the license plate. Continuing around to the passenger's side, he looked inside the vehicle where he saw a bent coat hanger and some cut wires dangling from beneath the dashboard. At that point, the trooper asked Hurley to step outside the car, and he was read the *Miranda* warnings. When Hurley inquired as to the reason for his arrest, the trooper, mindful of his supervisor's instructions to protect the informant, replied that he was under arrest for grand larceny of the automobile.

The trooper frisked Hurley for weapons and asked him to empty his pockets. After Hurley had purported to do so, however, the trooper noticed that the suspect had neglected to surrender a trunk key which was outlined on his pants pocket. Retrieving that key, the trooper opened the trunk and there discovered a cardboard carton that measured approximately 16 inches square. The box was sealed, both lengthwise and crosswise, with strips of tape and in no way revealed the character of its contents. Nevertheless, using either a sharp knife or his hands (he could not recall which), the trooper broke into the sealed container and found that it was filled with white plastic bags which contained marihuana.

The defendants were subsequently charged with criminal possession of a controlled substance in the fifth degree and conspiracy. After a suppression hearing, the court denied defendants' motion to suppress the marihuana, and after the denial of a further motion to dismiss on speedy trial grounds, the defendants both pleaded guilty to the crime of criminal possession of a controlled substance in the sixth degree.

To be lawful, a warrantless search must fit into one of the few carefully drawn exceptions to the warrant requirement (*Arkansas v Sanders,* 442 US 753, 758-761; *Katz v United States,* 389 US 347, 357). The burden is always on the party seeking the exception to show the need for it (*United States v Jeffers,* 342 US 48, 51). Here the facts do not support a claim that there was consent for the search, that the marihuana was in "plain view," that it was seized in "hot pursuit," that it was discovered during the course of an "inventory search," or that the sealed box was searched incident to a lawful arrest. The search may be justified, therefore, only if it can be brought within the confines of the "automobile exception" (see *Coolidge v New Hampshire,* 403 US 443; *Chambers v Maroney,* 399 US 42; *Carroll v United States,* 267 US 132).

Since the Supreme Court decided *United States v Chadwick* (433 US 1) it has been clear, however, that an exception for the automobile developed not only because the motor vehicle is inherently mobile but also, and perhaps primarily, because there is a "diminished expectation of privacy which surrounds the automobile" (433 US 1, 12). In that case the court refused to uphold the warrantless search of a 200-pound footlocker which had been seized from the trunk of an automobile; "[o]nce the federal agents had seized it * * * there was not the slightest danger that the footlocker or its contents could have been removed before a valid search warrant could be obtained" (433 US 1, 13). And as the court observed, the expectation of privacy associated with a repository for personal effects would be substantially greater than that associated with a motor vehicle whose primary function is transportation. *Chadwick,* of course, involved a situation where the police officers already had probable cause to believe that the footlocker contained contraband for some time prior to the time when they observed it being placed in the trunk of a waiting automobile. In addition, while the footlocker was eventually seized from the open trunk of that automobile, no attempt had ever been made to move the vehicle. To be sure, the case was not—and was not claimed to be—a traditional automobile search case. To some that may have appeared to be an important distinction (see, e.g., *United States v Ochs,* 595 F2d 1247, 1254-1255).

Recently it has become apparent that this distinction is not a valid one *(Arkansas v Sanders,* 442 US 753, *supra).* In *Sanders* the police had probable cause to believe that the contraband was being driven away in a particular taxi and there could be no question, therefore, but that "the police were justified in stopping the vehicle, searching it on the spot, and seizing the suitcase they suspected contained contraband" (p 761). Nonetheless, after it had reiterated that " '[t]he word "automobile" is not a talisman in whose presence the Fourth Amendment fades away and disappears' " (p 760, n 7, quoting *Coolidge v New Hampshire,* 403 US 443, 461-462) and had otherwise made clear that the extent to which the police may conduct warrantless searches of sealed containers and packages is not at all affected by the fact that those objects might have been seized during the course of a valid automobile search, the Supreme Court affirmed a State court's order which had suppressed the evidence found during the ensuing

warrantless search of the suitcase.* As in *Chadwick,* it did so because as a general rule, the need for a warrantless search would end once the police have seized the object to be searched and have it securely within their control; and significantly because the expectation of privacy associated with the object is not necessarily any less simply because it has been placed in an automobile for transportation rather than having been transported by some other means or stored in some other location (442 US 753, 763-764).

The dissenters seek to distinguish this case from *Sanders* by the fact that the contraband found in Spencer's automobile was contained in a cardboard box instead of a suitcase. In our view, however, the defendants had made manifest a clear expectation of privacy with regard to that which might be found within the box by securely sealing the carton so that it was necessary for the officer to cut or tear into it in order to examine the contents. Moreover, at the time of the search the driver had been arrested, the automobile was for all practical purposes immobilized, and the sealed container was in possession of the police. There could have been no reasonable belief that the carton would be removed or destroyed by the driver or anyone else, or that the contents presented any danger to the arresting officer. In short, the police performed a warrantless search and have articulated no grounds to bring it within one of the "few 'jealously and carefully drawn' exceptions * * * where the societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate" (442 US 753, 759).

Accordingly, the defendants' judgments of conviction should be reversed, their motions to suppress the seized contraband granted and the indictments dismissed.

MOULE, J. (dissenting). Accepting the facts as stated by the majority, we find them sufficiently distinguishable from those in *Sanders (Arkansas v Sanders,* 442 US 753) and *Chadwick*

---

* While the Supreme Court did, as the dissent emphasizes, declare that "[n]ot all containers and packages found by the police during the course of a search will deserve the full protection of the Fourth Amendment," we point out that it did so in the context of noting that "some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance," and that "in some cases the contents of a package will be open to 'plain view,' thereby obviating the need for a warrant" (422 US 753, 764, n 13).

*(United States v Chadwick,* 433 US 1) and would hold that the search of this sealed carton is within the automobile exception.

The Supreme Court in *Sanders* expressly refused to extend its holding to all sealed containers found within automobiles. The majority opinion speaks specifically in terms of luggage, and noted, "Not all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment. * * * There will be difficulties in determining which parcels taken from an automobile require a warrant for their search and which do not. Our decision in this case means only that a warrant generally is required before personal luggage can be searched" (442 US 753, 764, n 13). The majority of this court now holds, in effect, that a warrant is necessary to search any closed container found within an automobile, for there is no way to distinguish between a sealed carton and a shopping bag, or a covered pail, or an item wrapped in newspaper.

Further, a carton in the trunk of an auto is distinguishable from luggage. In *Sanders,* the court found that the inevitable expectation of privacy associated with luggage is not dispelled merely by its being placed in an automobile. This is because luggage is almost inevitably a repository for personal effects *(Arkansas v Sanders, supra,* p 764). A carton in the trunk of a car is not an inevitable repository for personal effects, and it is more likely that such a carton would contain tools, spare parts or any number of other items associated with the operation and use of an automobile. The fact that the carton was taped evidences as much a desire that its contents not spill as a desire to express an expectation of privacy. Such a carton is more analogous to an extra gas can or a tool box than it is to luggage. In addition, there was no proof that there were any names, addresses or contents indicated on the carton.

Finally, the rationale for the automobile exception applies more strongly to the facts of our case than it did in *Arkansas v Sanders.* There are two reasons for the distinction between automobiles and other private property. First, the inherent mobility of automobiles often makes it impracticable to obtain a warrant for their search and, second, the configuration, use and regulation of automobiles dilute the reasonable expectation of privacy which exists with respect to other property *(Arkansas v Sanders, supra,* p 761). In both *Sanders* and

*Chadwick,* the police had probable cause to believe the contraband was contained in the specific piece of luggage seized. Here, the police only had probable cause to believe that contraband was contained somewhere in the automobile. There was no indication whether the marihuana would be in a bag, a carton, under the upholstery, behind the door panels, or concealed in the spare tire or gas can. Therefore, the automobile's mobility is a consideration in this case which was not present in *Sanders,* and the Supreme Court's reluctance to impose on police departments the burden of having available the manpower and equipment necessary to impound, transport and protect automobiles suspected of containing contraband applies. Inasmuch as the police did not know where in the vehicle the contraband was, we should not impose on them the requirement that every closed container found within the auto be seized and taken to a Magistrate for a warrant, particularly where there is no assurance that the contraband is in one of the containers. Indeed, the holding here by the majority would seem to require that the auto either be impounded until the warrant for the closed container can be obtained and executed or that it be exhaustively searched on the spot in order to rule out the possibility that the contraband is still concealed within it. Such a result imposes too heavy a burden on the police and results in an even greater intrusion upon a suspect's privacy. The automobile exception was created for precisely these circumstances.

Defendants also contend that the court erred in denying their motion to dismiss for lack of a speedy trial. Defendants were arraigned on felony complaints on August 1, 1977 and, pursuant to their pretrial motions, suppression hearings were held on May 2, 1978 and on August 26, 1978. The court received the defendants' briefs in May, 1978 and received the prosecutor's brief in August, 1978. The decision of the court, however, was not rendered until January 22, 1979 and the defendants assert that by virtue of this delay they were denied their right to a speedy trial. CPL 30.30 provides that the People must be ready for trial within six months, exclusive of periods of delay chargeable to defendants. Also excluded in the calculation of time chargeable to the People are periods of time during which the court rules on various motions (CPL 30.30, subd 4, par [a]). In addition, delay of the trial court is not chargeable to the People *(People v Conrad,* 44 NY2d 863; *People v Gates,* 70 AD2d 734). Accordingly, the delay com-

plained of is not chargeable to the People, and defendants were not denied a speedy trial.

We would affirm the judgments of conviction.

DOERR and SCHNEPP, JJ., concur with CARDAMONE, J. P.; SIMONS and MOULE, JJ., dissent and vote to affirm in an opinion by MOULE, J.

Judgments reversed, on the law, motions to suppress granted and indictments dismissed.