THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PATRICIA MALDONADO, Appellant.

Second Department, September 2, 1980

---

## APPEARANCES OF COUNSEL

*Sarisohn, Sarisohn, Carner, Thierman, Steindler & Le Bow (Walter G. Steindler* and *Floyd Sarisohn* of counsel), for appellant.

*Patrick Henry, District Attorney (Charles M. Newell* of counsel), for respondent.

## OPINION OF THE COURT

TITONE, J.

The sole issue presented on appeal is whether, under the circumstances, a police search of an unsealed cardboard box was proper. The appellant contends that the trial court's denial of her motion to suppress the contents of the box, a quantity of cocaine, mandates reversal.

The pertinent facts, as revealed from the minutes of the suppression hearing, are not in dispute. On the morning of April 30, 1979, Detective Angelo Carrion, an undercover Suffolk County Narcotics officer, telephoned one Pedro Tavares Castillo to arrange for a purchase of cocaine. Tavares agreed to sell Carrion a kilogram of cocaine for $44,000, and arranged to meet the latter at a specified location on Route 110 in Melville at 1:00 P.M. After meeting with a group of Federal and State narcotics agents, Carrion proceeded in an unmarked car to the agreed upon meeting place. Tavares arrived at 1:05 P.M. in a Vega, accompanied by the appellant, Patricia Maldonado. After Carrion entered the Vega and sat down on the rear seat, Tavares handed him a white cardboard box with the name "Ripley Howard" printed on the cover.[1] Carrion opened the box, and observed five packages of cocaine. He then closed the box and returned it to Tavares, who, in turn, handed it to the appellant. The latter placed the box at her feet on the floor of the car. Carrion then explained that Tavares would have to follow him in order to obtain the money. The undercover officer proceeded to leave Tavares' car, walk to his own vehicle, and drive onto the Long Island Expressway, followed by Tavares in the Vega. Carrion proceeded to a rest area, where both he and Tavares stopped their vehicles.

At the rest area, where a backup team waited, Carrion left his car and gave his colleagues a prearranged signal indicating that drugs were present in Tavares' car. Tavares and appellant were promptly removed from the car by law enforcement officers and arrested. A Federal narcotics agent, Robert O'Leary, removed the "Ripley Howard" box from the floor of the car, opened it, and displayed its contents to

1. The box in question is one commonly used to transport newly purchased clothing from a retail clothing store of the same name.

Carrion.[2] Before opening the box, O'Leary had not known that it contained the cocaine which he had been seeking.

After indictment on charges of criminal possession of a controlled substance in the first degree, and criminal sale of a controlled substance in the first degree, the appellant moved for suppression of the contents of the cardboard box. Relying on *United States v Chadwick* (433 US 1), and *Arkansas v Sanders* (442 US 753), appellant contended that the warrantless opening of the box was violative of her constitutional rights. Following a hearing, appellant's application was denied. She subsequently pleaded guilty to one count of criminal possession of a controlled substance in the second degree, and was sentenced accordingly. The instant appeal ensued.

Appellant does not contend that the police lacked probable cause to search the automobile and seize the cardboard box. The facts of the case clearly demonstrate that, from the signal given by Detective Carrion, law enforcement agents knew that contraband was in the car and had ample reason to believe that it could be found in the "Ripley Howard" box. Nor does appellant deny that the circumstances were sufficiently exigent to justify the warrantless seizure of the box. The thrust of appellant's argument is that the law enforcement officials, having lawfully seized the box, should have held it unopened until a warrant could be procured. The warrantless search, appellant argues, was violative of her expectation of privacy in the contents of the box *(United States v Chadwick, supra; Arkansas v Sanders, supra)*, and can be justified by none of the "jealously and carefully drawn" exceptions to the warrant requirement *(Jones v United States,* 357 US 493, 499). The issue thus presented is whether the warrantless search of the "Ripley Howard" box violated the rights of the appellant under the Fourth and Fourteenth Amendments.

In *Chadwick* (433 US 1, *supra),* the United States Supreme Court held that although Federal agents were acting with probable cause when they seized a locked footlocker as it was being placed in the trunk of a car, they should not have opened the luggage without first obtaining a search warrant. The court noted (p 13) that "luggage is intended as a repository of personal effects" and (p 11) that the defendants, by

2. At the suppression hearing, O'Leary testified that appellant and Tavares were handcuffed at the scene of the arrest. He could not recall, however, whether appellant, who was standing near the passenger door of the vehicle, had already been handcuffed at the time he removed the box.

placing their property in a locked footlocker, "manifested an expectation that the contents would remain free from public examination." Given the defendant's constitutionally protected privacy interest in the contents of the luggage, the law enforcement officers should have taken the footlocker into their custody and held it, unopened, until a search warrant could be obtained.

*Chadwick (supra)* was followed by *Arkansas v Sanders (supra)*. In *Sanders* the United States Supreme Court held that although a vehicle was properly stopped by police in a search for contraband, a warrantless search of an unlocked suitcase found within the trunk of the car was unlawful under *Chadwick (supra)*. *Sanders (supra)* expanded upon the *Chadwick* rule in two important respects. First, *Sanders* indicated that the *Chadwick* rule applied with equal force to unlocked pieces of luggage and *so long as the container, whether locked or unlocked, may be characterized as personal luggage,* a warrant had to be obtained before a search could be effected. Second, *Sanders* (442 US, at p 765, n 13) made clear that the "automobile exception" to the warrant requirement, under which warrantless automobile searches have frequently been justified *(Carroll v United States,* 267 US 132; *Chambers v Maroney,* 399 US 42) does not apply to the search of containers found within a vehicle: "the extent to which the Fourth Amendment applies to containers and other parcels depends not at all upon whether they are seized from an automobile".[3]

The question left unresolved by *Sanders (supra),* and posed by the instant appeal, is whether a container dissimilar to personal luggage, which has been properly seized in exigent circumstances, must, like luggage, be left unopened until a warrant is obtained. In terms of constitutional analysis, it makes no difference whether the container is seized in an automobile, or somewhere else. Yet, as the *Sanders* majority intimated, in a footnote, the warrantless search of some types of containers, found either within or without an automobile, may be justifiable: "Not all containers and packages found by police during the course of a search will deserve the full

---

3. In view of the express language of the *Sanders* opinion (442 US 753), the People's reliance on the "automobile exception" in its attempt to justify the search of the "Ripley Howard" box is thus totally misplaced. The search must be justified, if at all, by some exception to the warrant requirement equally applicable to searches of containers found within automobiles and searches of containers found at other locations.

protection of the Fourth Amendment. Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance. Similarly, in some cases the contents of a package will be open to 'plain view,' thereby obviating the need for a warrant. See *Harris v. United States,* 390 U.S. 234, 236 (1968) *(per curiam).* There will be difficulties in determining which parcels taken from an automobile require a warrant for their search and which do not. Our decision in this case means only that a warrant generally is required before personal luggage can be searched and that the extent to which the Fourth Amendment applies to containers and other parcels depends not at all upon whether they are seized from an automobile." *(Arkansas v Sanders,* 442 US 753, 764-765, n 13, *supra.)* The dissenters in *Sanders* (442 US, at p 768) complained that the rule adopted by the majority would engender confusion, and that "the briefcase, the wallet, the package, the paper bag, and every other kind of container" were "[s]till hanging in limbo, and probably soon to be litigated". A large number of recent cases in State and lower Federal courts, have, in fact, considered the effect of *Chadwick* (433 US 1, *supra)* and *Sanders (supra)* on warrantless searches of various types of containers. Not all of these cases, however, have presented difficult issues for judicial resolution.

For example, many of the cases pertain to objects which undoubtedly constitute personal luggage, such as suitcases (see, e.g., *United States v Montano,* 613 F2d 147; *United States v MacKay,* 606 F2d 264), a duffle bag *(United States v Johnson,* 588 F2d 147), a backpack *(United States v Meier,* 602 F2d 253), a tote bag *(People v Minjares,* 24 Cal 3d 410, cert den 444 US 887), and a travel bag *(People v Little,* — Col —, 598 P2d 140). Such items clearly fit within the purview of the *Chadwick* and *Sanders* decisions *(supra).* (However, see *State v Schrier,* 283 NW2d 338 [Iowa], upholding the warrantless search of a knapsack on the ground that the contents could be seen by pushing a flap aside.)

Other cases concern containers which, although not considered to be luggage, are nevertheless treated as repositories for personal belongings and associated with a similar expectation of privacy. Thus, warrantless searches of briefcases *(United States v Presler,* 610 F2d 1206; *Moran v Morris,* 478 F Supp 145; *Webb v State,* 373 So 2d 400 [Fla]; *Araj v State,* 592

SW2d 603 [Tex]; *State v Daniel,* 589 P2d 408 [Alaska, closed but unlatched briefcase]), a portfolio *(United States v Miller,* 608 F2d 1089), a purse *(Ulesky v State,* 379 So 2d 121 [Fla]), and a leather bag *(People v Pressman,* NYLJ, June 11, 1980, p 10, col 1) have all been held to be unlawful. (See, also, to the same effect *State v Marcum,* 24 Wash App 441 [gym bag]; *United States v Bella,* 605 F2d 160 [guitar case]; *State v DeLong,* 43 Ore App 183 [camera case]; and *Moore v State,* — Ark —, 594 SW2d 245 [shaving kit].)

More troublesome are cases which involve searches of containers which are neither luggage nor have any of the attributes thereof. The courts, with the notable exception of the California Supreme Court in *People v Dalton* (24 Cal 3d 850, cert den *sub nom. California v Dalton,* 445 US 946 [wherein the warrantless search of a large metal box and a "Longine" box was deemed to be unlawful]), have generally upheld searches of unsecured boxes *(United States v Neumann,* 585 F2d 355; *State v Kahlon,* 172 NJ Super 331), paper bags *(United States v Ross,* — F2d — [DC Cir, TAMM, J., April 17, 1980]; *United States v Vento,* 533 F2d 838; *Clark v State,* 574 P2d 1261 [Alaska]; *Webb v State, supra* [dictum]), and other receptacles such as: plastic bags *(United States v Gooch,* 603 F2d 122; *Flynn v State,* 374 So 2d 1041 [Fla]), a closed but unlocked toolbox *(Wyss v State,* 262 Ark 502), a covered paper cup *People v Diaz,* 101 Cal App 3d 440) and an ice chest *(State v Heberly,* 120 Ariz 541).

On the other hand, several courts have invalidated searches of nonluggage type containers which are locked *(People v Dalton, supra* [metal box]), zippered *(People v Belton,* 50 NY2d 447 [zippered pockets of a jacket found in a car during a warrantless search of the vehicle]; *United States v Markland,* 489 F Supp 932 [an insulated bag]), taped *(United States v Dien,* 609 F2d 1038 [cardboard box]; *People v Spencer,* 74 AD2d 77 [cardboard box]), or fastened shut *(People v Rinaldo,* 80 Ill App 3d 433 [large box with metal straps]).

Attention should also be directed to *Walter v United States* (447 US —, 48 USLW 4807). In *Walter (supra,* p —, p 4810) four Justices of the Supreme Court of the United States agreed that the defendant possessed a legitimate expectation of privacy in cartons, later found to have contained obscene films, which were "securely wrapped and sealed, with no labels or markings to indicate the character of their contents".

In other cases, however, warrantless searches of certain

secured nonluggage type containers have been upheld. For instance, the Kentucky Court of Appeals in *Cooper v Commonwealth* (577 SW2d 34) upheld a warrantless search of a taped electric razor case, and the Fifth Circuit Court of Appeals in *United States v Gaultney* (581 F2d 1137, reh den 586 F2d 842), took similar action with respect to a taped scrabble box. Likewise, the First Circuit Court of Appeals in *United States v Dall* (608 F2d 910) determined that the warrantless search by police officers of a camper cap on a pickup truck was valid on the ground that such compartment was an integral part of the vehicle and that the appellant had failed to sustain the burden of proving that he had a legitimate expectation of privacy in the camper cap (cf. *State v Guzman,* 362 So 2d 744 [La], where a warrantless search of a paper bag taped under the dashboard of a car was held to be valid).

Perhaps the most carefully reasoned justification for the "paper bag" exception is found in the District of Columbia Court of Appeals opinion in *United States v Ross (supra).* In *Ross,* the police, acting on the tip of an informant who had previously supplied reliable information, stopped and searched an automobile driven by the defendant. A closed but unsealed "lunch-type" brown paper bag, and a red leather pouch were discovered. The bag was immediately opened, and found to contain 30 glassine envelopes filled with a white powder. The defendant was arrested and taken to the precinct, where the pouch was opened and $3,200 in currency found. Laboratory analysis later revealed that the white powder was heroin.

Over the vigorous dissent of Judge BAZELON, who complained that "the majority makes the level of constitutional protection available to a citizen dependent on his ability to purchase a fancy repository for his belongings" *(United States v Ross,* — F2d —, —, *supra),* the court held that the bag, but not the pouch, was properly opened without a warrant. The court reasoned that the bag, unlike the pouch, could not be characterized as luggage, and carried with it a lesser expectation of privacy:

"If a paper bag were a form of luggage, our task would be a simple one: *Sanders* requires a warrant before searching any piece of luggage. Paper bags differ from personal luggage in two material respects, however. First, paper bags offer at best only minimal protection against accidental and deliberate intrusions. A paper bag can fall open or break very easily. It

presents no real obstacles to invasions by the curious or the dishonest once it has left its owner's actual possession. Because it is neither so secure nor so permanent as typical forms of luggage, its contents are much more likely to become subject to public display than if the same items had been stored in luggage. Thus, it is doubtful that one realistically can expect a paper bag to remain closed or intact, its contents unrevealed, at least if it has left its owner's hands. Cf. *United States v Neumann,* 585 F2d 355 (8th Cir 1978) (cardboard boxes not secure; inventory search justified).

"Second, paper bags are not *inevitably* associated with the expectation of privacy. See *Arkansas v Sanders,* 442 US 752, 762 (1979). Although a paper bag *may* be pressed into service as a repository of personal effects, we do not believe a reasonable man would identify a paper bag as a normal place to entrust his intimate personal possessions. In contrast, luggage in general serves to carry clothes, toiletries, and other items associated with day-to-day living. Luggage typically functions as a portable closet and chest of drawers; it follows that a person could justifiably maintain a substantially higher expectation of privacy in his personal luggage than in a paper bag." *(United States v Ross,* — F2d —, —, *supra.)*

The *Ross* court intimated that there were some paper bag searches to which the *Sanders* requirements (442 US 753, *supra)* would apply. If the bag were sealed, for example, or placed among items of personal luggage, then a "special expectation of privacy" would have been evident and a search warrant would have been required. Since such circumstances were not present in *Ross (supra),* the warrantless search was deemed permissible. Four recent decisions, all involving warrantless searches of cardboard boxes, appear to be in accord with the reasoning of the *Ross* court. In *United States v Dien* (609 F2d 1038, 1045, *supra),* the Second Circuit invalidated the warrantless search of a cardboard box, found to contain a large quantity of marihuana on the grounds that: "By placing the marihuana inside a plain cardboard box, sealing it with tape and placing it inside a van the windows of which had been painted over and in which plywood had been placed behind the drivers' seat, petitioners manifested an expectation that the contents would remain free from public examination". A New York court reached a similar result in *People v Spencer* (74 AD2d 77, *supra).* In *Spencer (supra,* p 81), the Appellate Division, Fourth Department concluded that the

defendants had manifested "a clear expectation of privacy with regard to that which might be found within the box by securely sealing the carton so that it was necessary for the officer to cut or tear into it in order to examine the contents."

A warrantless search of a cardboard box, found in the trunk of an automobile, has been upheld in *State v Kahlon* (172 NJ Super 331, *supra).* In *Kahlon,* the box was unsealed and the flaps, while closed, did not completely conceal its contents. "In these circumstances," the New Jersey Appellate Division asserted, "it cannot be said that defendant had any reasonable expectation of privacy in the contents of the box or that the exigency that permitted the opening of the car trunk at the scene did not apply as well to the then search of the box" *(State v Kahlon, supra,* p —). Finally, in *United States v Neumann* (585 F2d 355, 360-361, *supra)* a pre-*Sanders* case markedly similar to the case at bar, the Eighth Circuit, considering the warrantless search of a department store box, distinguished *Chadwick* (433 US 1, *supra)* and upheld the search when it stated: "This court is of the opinion that the warrant requirement in *Chadwick* should not be extended to the facts of this case. There is simply an insufficient expectation of privacy in an unsecured cardboard box sitting in plain view in the passenger compartment of an automobile. The arresting officers merely lifted the lid of the box and discovered a large quantity of pills."

In my opinion it is impossible to formulate a per se rule applicable to all warrantless container searches. Unless the container is personal luggage, or other repository inevitably associated with an expectation of privacy (see *Arkansas v Sanders,* 442 US 753, 762, *supra)* it is exceedingly difficult to determine from the nature of the container, whether a warrant must be obtained before a search is made of its contents. The propriety of the search will often depend on the manner in which the container is secured and the circumstances under which it is discovered. It must be observed at this point, however, that an owner does not inevitably possess a reasonable expectation of privacy in a bag or box which offers "at best only minimal protection against accidental and deliberate intrusions" *(United States v Ross,* — F2d —, —, *supra,).*

As Professor LaFave has noted (Search and Seizure—A Treatise on the Fourth Amendment, vol 2, 1980 Pocket Part, pp 40-41): "there are some containers * * * where the privacy interest vis-à-vis the contents and the possessory interest in

the container itself are not particularly distinct. Thus, one might well part with a locked footlocker or even an unlocked suitcase and still expect privacy as to the contents, but the same may not be said of a mere paper bag. This being so, it is not fanciful to suggest that the time, energies and expense of the warrant process would be misdirected if police may ransack cars without a warrant but yet, if they confront a paper bag therein, must carry it tightly clutched to the judge for approval to peek inside."

Applying these considerations to the case at bar, I conclude that the warrantless search of the "Ripley Howard" box was not unlawful. While a box of this sort is commonly used to transport recently purchased clothing, it is hardly comparable to personal luggage which securely encases varied articles of a personal nature. Like the department store box in *Neumann (supra)*, the "Ripley Howard" box was discovered in plain view on the floor of the automobile, and could be opened by merely lifting a lid.

Under the circumstances it can hardly be said that the police had the slightest reason to believe that the box was being used as a substitute for luggage. In fact, a few minutes earlier, the appellant's companion, Tavares, voluntarily displayed the contents of the box to Carrion, thereby revealing that it contained cocaine.[4] The appellant possessed no legitimate expectation of privacy in the contents of the box. The exigency which justified the warrantless seizure of the box justified the warrantless search as well.

Because the search of the box was proper under the exigent circumstances exception, it is unnecessary to decide whether the search of the box could be justified on the separate ground that it was incident to the appellant's arrest (see *Chimel v California*, 395 US 752). Since the appellant asserts no other claims of error, the judgment should be affirmed.

HOPKINS, J. P., DAMIANI and LAZER, JJ., concur.

Judgment of the County Court, Suffolk County, rendered September 14, 1979, affirmed.

---

4. I attach no legal significance to the fact that Agent O'Leary, rather than Detective Carrion, searched the box. Had O'Leary not promptly located the cocaine, Carrion would undoubtedly—and justifiably—have opened the box himself within moments (see *United States v Ragsdale*, 470 F2d 24).