**UNITED STATES of America**

v.

**Fredrico E. LOUNDMANNZ, Appellant.**

**No. 71-2047.**

United States Court of Appeals, District of Columbia Circuit.

Nov. 17, 1972.

Certiorari Denied Feb. 26, 1973.
See 93 S.Ct. 1431.

Messrs. De Long Harris and W. Alton Lewis, Washington, D. C., were on the brief for appellant.

Mr. Harold H. Titus, Jr., U. S. Atty., with whom Messrs. John A. Terry, Herbert B. Hoffman and Robert D. Zsalman, Asst. U. S. Attys., were on the brief for appellant.

Before DANAHER, Senior Circuit Judge, and MacKINNON and ROBB, Circuit Judges.

PER CURIAM:

The first count against appellant charges that "on or about July 29, 1970 . . . [he] was concerned as owner, agent, and clerk, and in other manners in managing, carrying on and promoting a lottery known as the numbers game" in violation of D.C.Code § 22–1501.[1] The offense charged is a felony. The second count charged that at the same time and place appellant had "possession" of "tickets . . . slips . . . papers and writing . . . used and to be used in a lottery known as the numbers game" in violation of D. C.Code § 22–1502,[2] which is a misde-

1. D.C.Code § 22–1501 provides:

§ 22–1501. Lotteries—Promotion—Sale or possession of tickets.

If any person shall within the District keep, set up, or promote, or be concerned as owner, agent, or clerk, or in any other manner, in managing, carrying on, promoting, or advertising, directly or indirectly, any policy lottery, policy shop, or any lottery . . . he shall be fined upon conviction of each said offense not more than $1,000 or be imprisoned not more than three years, or both. . . .

2. D.C.Code § 22–1502 provides:

§ 22–1502. Possession of lottery or policy tickets.

If any person shall, within the District of Columbia, knowingly have in his possession or under his control, any record, notation, receipt, ticket, certificate, bill, slip, token, paper, or writing, current or not current used or to be used in violating the provisions of section 22–1501, 22–1504, or 22–1508, he shall, upon conviction of each such offense, be fined not more than $1,000 or be imprisoned for not more than one year, or both. . . .

meanor. Following his conviction on both counts appellant was sentenced to concurrent prison terms of one to three years on count one and one year on count two.

On this appeal it is argued that appellant's convictions should be reversed, first, because his arrest without a warrant was without probable cause and the seizure of numbers slips, etc., was illegal with the resultant claim that such evidence was improperly admitted into evidence. Appellant's second contention is that the evidence at trial was insufficient to support the judgment of conviction. We affirm.

The two issues are somewhat blended as they both involve the observations of the arresting officers prior to the arrest of appellant at the scene of the alleged numbers operation.

Taking that view of the evidence most favorable to the Government, as we must, we summarize the evidence as follows: Several police officers who were working as part of the "old clothes" unit observed appellant over a forty-five minute period on the day in question. One officer (Officer Williams) viewed appellant's activities in the vicinity of the corner of Eighth and T Streets for a considerable period of time through high-powered binoculars from a high vantage point in a nearby building. During this period appellant was observed on three occasions to exit from stores in the vicinity and then walk to a car parked on the corner of Seventh and T Streets and hand small pieces of white paper and money to the man (Harris) inside the car. When he exited from the third store appellant was carrying a brown paper bag from which he was seen to take several pieces of white paper. After doing so appellant placed the bag behind a trash can and then walked over to the same car as before and handed the paper and some money to the man (Harris) seated inside the car.

While all this was going on five other persons were carrying on the same type of activity, accepting money from people on the street, writing something on slips of paper and then handing the money and the slips to the man in the same car that appellant had handed his slips and money. Even though Officer Williams was observing these transactions through binoculars he could not tell what was written on the slips of paper. So after forty-five minutes he left his third floor vantage point and walked down to the corner of Seventh and T Streets. There, while Williams was standing within three to five feet of the parked car, he saw several of the five people who were observed as being engaged in much the same type of activity as appellant, pass slips of paper and money to the man inside the car. At this time Officer Williams saw the writing on the slips of paper and recognized them as "numbers slips." (This testimony was received in evidence without objection). Tr. 15. Shortly thereafter Officer Williams gave radio orders to other officers operating with him to arrest appellant and some of the others.

Following the arrest of appellant and the others the brown paper bag which appellant had placed behind the trash can was recovered and found to contain numbers slips and gambling paraphernalia. The automobile was also searched and $1,298.77 in money, numbers slips and gambling paraphernalia were recovered. A total of eighty "number bet slips" were found in the paper bag and the car. A "gambling tape" or "record" showing a total figure of $638.15 was also recovered. The appellant did not take the stand.

█ It is obvious from all the activities he observed that Officer Williams had reasonable grounds to believe that a numbers lottery was in progress, that appellant was engaged as an "agent" or "clerk" in that activity, and that the District of Columbia statutes prohibiting such activity were being violated in his presence.[3] The validity of this conclusion is not undermined, as appellant

---

3. *Cf.* United States v. Davis, 147 U.S.App.D.C. 400, 402–403, 458 F.2d 819, 821–822 (1972).

suggests, by Officer Williams' inability to read what was written on the slips of paper that appellant handed to Harris. When Williams observed that others engaged at the same time and place in like activity to that of appellant were handing numbers slips and money to the same man it was reasonable for him to infer that the pieces of paper that appellant was handing with money to the same man were also numbers slips. The inference here is stronger than existed in De Bruhl v. United States, 91 U.S. App.D.C. 125, 126, 199 F.2d 175, 176, cert. denied, 344 U.S. 868, 73 S.Ct. 111, 97 L.Ed. 673 (1952) where we found probable cause to believe that an individual was taking numbers bets when the police on two separate occasions merely saw him standing in the corridor of a public building accepting pieces of paper and money from a number of people. Here Officer Williams who ordered the arrest actually saw and recognized "numbers slips." When all the circumstances here are pieced together they amply justify the finding of probable cause. Mills v. United States, 90 U.S. App.D.C. 365, 366–367, 196 F.2d 600, 601–602, cert. denied, 344 U.S. 826, 73 S.Ct. 27, 97 L.Ed. 643 (1952).

Appellant's argument against a holding that probable cause existed relies heavily on the fact that Officer Williams was making his observations through binoculars and that the officers who made the arrest at the direction of Officer Williams did not themselves have probable cause. Neither argument is sustainable. One using high-powered binoculars may have every bit as good an opportunity to observe as one within a few feet of the subject. In fact, his observations may be more revealing because the person he is observing is unaware that he is being observed and this may permit him to observe activities that an individual might conceal if another person was close by. As for the second contention, the requirements of probable cause are satisfied in this case since the police officer ordering the arrest had adequate first-hand knowledge to support a finding of probable cause. Daniels v. United States, 129 U.S.App. D.C. 250, 252, 393 F.2d 359, 361 (1968).

A review of the facts outlined above also fully supports our conclusion that there was sufficient evidence to support the convictions on both counts of the indictment.[4]

Affirmed.

---

4. The summation of the evidence in the Government's brief is fully supported by the record:

Viewed in the light most favorable to the Government, the evidence in the instant case shows (1) that over a period of forty-five minutes appellant entered three business establishments in the 1800 block of Seventh Street; (2) that he remained in each store for approximately five to ten minutes; (3) that each time he left one of these stores, he walked to a car parked at the intersection of Seventh and T Streets and handed small pieces of white paper and money to the occupant of the car; (4) that after leaving the third store, appellant, carrying a brown paper bag, walked to a parking lot and began to talk with several persons; (5) that when the conversations ended, he removed several pieces of white paper from the bag, placed it behind a trash can and handed the paper and an undetermined amount of money to the occupant of the car (Tr. 12–16, 21–23, 27); (6) that five other persons were also passing slips of paper and money to the occupant of the car after taking the money from people passing by and then making notations on the paper; (7) that these pieces of paper were recognized by Officer Williams to be numbers slips (Tr. 15–16, 29–30); (8) that the brown paper bag which appellant placed behind the trash can was recovered and found to contain numbers slips; and (9) that numbers slips, gambling paraphernalia and $1,298.77 were recovered from the parked car (Tr. 18–21, 31, 33).

Gov. br. p. 9.