**UNITED STATES of America**

v.

**Bernard GIBSON, Appellant.**

**UNITED STATES of America**

v.

**Deborah Y. HAGANS, Appellant.**

**Nos. 80-1225, 80-1228.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 25, 1980.

Decided Nov. 24, 1980.

---

**7.** *See* cases cited pp. 5–6 *supra*; 9 Moore's Federal Practice ‹ 208.06[1] at 8–18.

762

Patrick J. Christmas, Washington, D. C., for Bernard Gibson.

James H. Craddock, Washington, D. C., (appointed by this Court) for Deborah Y. Hagans.

Charles W. Brooks, Asst. U. S. Atty., with whom Charles F. C. Ruff, U. S. Atty., John

A. Terry, Michael W. Farrell and James F. Rutherford, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before ROBINSON, WILKEY and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

Defendants Gibson and Hagans appeal from a conviction for possession of heroin with intent to distribute. The appeal raises four issues: the legality of two searches conducted at the time of arrest and the propriety of two evidentiary rulings made by the district court.

## I. Facts

Officer Haskins, an officer regularly assigned to narcotics investigations, was stationed at a third floor window of an apartment building in an area where residents had complained about narcotics transactions. He observed a Cadillac Seville carrying four persons pull into a parking lot adjoining the building and park "almost right up against the building." Transcript at 14. Haskins estimated that he was between thirty and forty-five feet from the occupants of the car. Using binoculars, Haskins observed this sequence of activity: defendant Gibson, seated in the driver's seat, counted out numerous glassine packets containing a white substance; defendant Hagans, seated behind Gibson, passed Gibson a sum of money; Gibson put most of the money and one of the packets into a black purse and gave the remaining money and packets to Hagans; Gibson then placed the black purse between the armrests of the front seat of the car.

Shortly thereafter, Haskins, joined by back-up officers, approached the car, identified himself, and ordered the four occupants from the car.[1] While other officers held Gibson and searched Hagans, Haskins took the black purse from the car. He opened it and found $1325 and two packets of white powder, later identified as heroin.

---

1. The other two occupants were not arrested and are not involved in this appeal.

After arresting Gibson and Hagans, Haskins searched the trunk of the car and found a "partially opened" brown paper bag. Transcript at 32. He opened the bag further and removed from it two large vials of preludin pills. Meanwhile, officers had found sixteen packets of heroin and $60 on defendant Hagans and $561 on defendant Gibson.

The government charged Gibson and Hagans with possession of heroin and Gibson with possession of the preludin pills. The defendants moved to suppress the evidence found in the black purse and paper bag. After the district court denied the motion, the defendants agreed to a stipulated trial without a jury. The government in turn dismissed all charges except the charge of possession of heroin with intent to distribute. The district court found both defendants guilty of that charge.

## II. *Fourth Amendment Issues*

■ Defendants attack the searches of both the black purse and the paper bag. Since the contents of the paper bag related solely to the charge against Gibson that was dismissed, we need not address the legality of that search. The two vials of preludin pills could not have contributed to the defendants' convictions for heroin possession. Thus the failure to suppress, even if erroneous, was not prejudicial.

■ Seizure of the black purse from the car was permissible under the automobile exception to the warrant requirement. Under *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), and our own decision in *United States v. Hawkins*, 595 F.2d 751 (D.C.Cir.1978), *cert. denied*, 441 U.S. 910, 99 S.Ct. 2005, 60 L.Ed.2d 380 (1979), the police could choose either to de-

tain the car while seeking a warrant or to search the car immediately.

■ Defendants argue, however, that once the purse was seized, *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), mandated a warrant prior to police search of the purse's interior. We pretermit that argument, because the search was justified on other grounds. Officer Haskins testified that he observed Gibson putting packets containing a white substance into the black purse. This observation, we conclude, brings the case within the court's "plain view" holding in *United States v. Johnson*, 561 F.2d 832 (D.C.Cir.) (*en banc*), *cert. denied*, 432 U.S. 907, 97 S.Ct. 2953, 53 L.Ed.2d 1080 (1977).

■ As a threshold matter, we note that Officer Haskins' use of binoculars to observe the activity in the car did not violate the Fourth Amendment. The car in which defendants were observed was parked in an open lot alongside an apartment building. Anyone happening along the street could have glanced into the car and observed the narcotics transaction.[2] A person at any of the windows on the side of the building at which Officer Haskins was stationed might have looked into the car.[3] Situated as they were, the defendants "had no right to assume that law enforcement officers would not enhance their ability to see . . . them by use of various artificial means such as binoculars." *United States v. Moore*, 562 F.2d 106, 112 (1st Cir. 1977), *cert. denied*, 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521 (1978). *See United States v. Powell*, 638 F. 2d 71 (9th Cir. 1979) (amended Jan. 29, 1980) (upholding a conviction based in part on the actions of an officer who, standing 20–25 yards from a truck, used binoculars to peer into the truck).[4]

2. *Cf. Cardwell v. Lewis*, 417 U.S. 583, 590, 94 S.Ct. 2464, 2469, 41 L.Ed.2d 325 (1974) (plurality opinion) ("A car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its contents are in plain view.").

3. One of the defendants' witnesses testified that, during an experiment designed to duplicate the facts surrounding the arrest, he could

not see with his naked eye into the car's interior from a second floor window. At another point, however, the same witness testified that he could in fact see the back of the front seat from the window. Transcript at 103.

4. *See also United States v. Minton*, 488 F.2d 37 (4th Cir. 1973) (per curiam) (officer used binoculars to watch defendant unload one-gallon jugs of illicit whiskey from a truck), *cert. de-*

Officer Haskins' lawful observation of Gibson placing glassine packets in the black purse, and the police action taken within minutes thereafter make the instant case clearer than the one the court confronted *en banc* in *Johnson, supra.* There, a police officer, peering through the basement window of a residence, saw three men seated at a table holding narcotics paraphernalia and "a pyramid of white powder eight to ten inches high." 561 F.2d at 835. The officer returned forty minutes later with other officers and entered the house without a warrant. The three men were arrested, but the narcotics were no longer in sight. The officers thereupon searched the basement and eventually found bundles of narcotics between mattresses on a bed and in a canvas bag concealed in an old rug. The *en banc* opinion in *Johnson* concentrated on the questions whether the officer was trespassing when he looked through the basement window and whether, since there was a forty minute delay before entering the house, the officers should have obtained a warrant. Resolving those questions against the defendants, Judge McGowan, writing for the court, turned finally to the warrantless search of the basement. He reasoned that "the police ha[ving] seen a crime actually in progress with contraband in plain view ... they were fully authorized both to make arrests and to seek out the contraband." *Id.* at 844. Thus the search power could be "viewed as incident to arrest, or as deriving independently from the initial observation of the contraband." *Id.* at 845.

The instant case presents neither of the features that made *Johnson* problematic. No considerable time span separated the sighting of the packets from the search. Rather, the search followed on the heels of the observation. No extensive quest was involved. Officer Haskins proceeded at once to the place where the packets rested.[5] In sum, guided as we are by the *Johnson* opinion, we find no error in the failure to suppress the evidence found in the black purse.

## III. *Evidentiary Rulings*

Defendant Hagans attacks two of the district court's evidentiary rulings; both challenges are meritless.

■ First, Hagans complains that Larry Kenan, a lay witness for defendants, was not allowed to testify that in his opinion he could not have seen into the interior of the car if he had been standing at a second story window using binoculars. Kenan and defendant Gibson had attempted to recreate the circumstances surrounding the arrest in an effort to show that Officer Haskins could not have seen into the car carrying Gibson and Hagans. The two went to a second story window of the building in which Haskins had been stationed, made observations, and took pictures. They did not, however, take along binoculars. Kenan was allowed to testify about what he saw during the experiment but he was not allowed to speculate about what he might have seen if he had used binoculars. This was not error. While a lay witness may offer opinion testimony when that testimony will be helpful to the trier of fact, Fed. R.Evid. 701, we know of no case holding that a trial judge must permit a lay witness to use one set of observations as the foundation for an opinion about what he might have seen under different circumstances.

■ Second, Hagans argues that the district court improperly excluded an advertis-

*nied,* 416 U.S. 936, 94 S.Ct. 1936, 40 L.Ed.2d 287 (1974); *United States v. Loundmannz,* 472 F.2d 1376 (D.C.Cir.1972) (per curiam) (officer used binoculars to observe defendant approach car and hand small slips of white paper and money to a man seated in the car), *cert. denied,* 410 U.S. 957, 93 S.Ct. 1431, 35 L.Ed.2d 291 (1973); *United States v. Grimes,* 426 F.2d 706 (5th Cir. 1970) (per curiam) (officer positioned 50 yards from defendant used binoculars to watch defendant load large cardboard boxes into car). *But cf. United States v. Kim,* 415 F.Supp. 1252 (D.Haw.1976) (intrusion into private home by FBI agents using 800 millimeter telescope at a location a quarter of a mile from the surveillance site held an unreasonable search).

5. Here, in contrast to *Arkansas v. Sanders, supra,* the officer did not merely suspect the presence of contraband, he had seen the packets in defendants' possession.

ing brochure displaying a Cadillac Seville. The brochure was offered to buttress the defendants' theory that Officer Haskins could not have seen into the car. The district court found, however, that the car portrayed in the brochure differed in a material respect from the car in which Gibson and Hagans were found. The district court did allow the defendants to introduce photographs of the actual car involved in the episode, photographs Gibson had taken at the scene of the arrest. In view of the district court's "wide discretion to admit or exclude evidence where the question is one of relevancy or materiality," *United States v. Morgan*, 581 F.2d 933, 936 (D.C.Cir.1978), we find no error in the ruling excluding the brochure.

### Conclusion

The items seized from the black purse were in "plain view" of the arresting officer; therefore they were properly allowed into evidence. No other alleged error called to our attention warrants reversal of the convictions. Accordingly, the judgment of the district court is

*Affirmed.*