**UNITED STATES of America, Plaintiff,**

v.

**Robert GRIFFIS, Defendant.**

**No. CR-3-88-20.**

United States District Court, S.D. Ohio, W.D.

Aug. 2, 1989.

Supplemental Opinion Aug. 30, 1989.

Dale A. Goldberg, Asst. U.S. Atty., Dayton, Ohio, for plaintiff.

Patrick A. Flanagan, Dayton, Ohio, for defendant.

RICE, District Judge.

This case is now before the Court on Defendant's Motion to Suppress (Doc. # 6) evidence of items taken from Defendant's home on the evening of his January 25, 1988, arrest, statements made by Defendant in conjunction with the arrest and search, and all derivative evidence on the grounds that (1) the consent to search and the waiver of rights and consent to speak (the consent to speak) were obtained through coercion by Government agents in violation of Defendant's fourth and fifth amendment rights, (2) the search was illegal because Defendant was not permitted to contact his attorney, (3) the search was unreasonable in that no search warrant had been obtained, (4) the arrest and search were illegal in that no arrest warrant had been obtained and (5) the statements made by Defendant in conjunction with the arrest and search were illegally obtained because Defendant had not been properly advised of his constitutional rights (Memorandum in Support of Motion to Dismiss, Doc. # 24, pp. 1–2).

There is substantial dispute as to facts critical to determination of the legality of the entry into Defendant's residence and execution of the two consent forms: (1) whether Government agents broke into Defendant's residence without identifying themselves (TR. 322) or entered only after identifying themselves when Defendant attempted to flee (TR. 228, 255) and (2) whether one or both consent forms were executed by Defendant within a few minutes after a brief discussion with Agent Calpin in the bathroom (TR. 79–83) or were signed only after extended badgering of Defendant and denial of Defendant's request to call his attorney (TR. 326–329, 336–338).

After three days' testimony of Government agents involved in the arrest and search, of Defendant, and of witness Gretchen Rentz, now Defendant's girlfriend (TR. 301), and observing their demeanor, this Court cannot conclude that the testimony of Defendant and witness Rentz is entirely credible (e.g., testimony that as Doyle, the cooperating informant, returned to Defendant's home agents broke into the home without identifying themselves (TR. 322), testimony that agents did not undertake a protective sweep of Defendant's home for approximately 10 minutes following their taking Defendant into custody, despite their suspicions about the presence of weapons and easily destructible evidence (TR. 322, 351), or testimony that a briefcase and bag, as described by Defendant in the conversation monitored by Agent Flick, did not appear in the kitchen until after agents had gone through the entire residence (TR. 341)). Although Defendant's account closely matches that related by witness Rentz, the Court is unable to conclude that the consistency is more probably attributable to the veracity of the two accounts than to possible cooperation between the two in reconstructing the events of the evening. Contrary to the suggestion of Defendant, the Court cannot conclude that a witness "has nothing to gain" (Doc. # 24, p. 15) in having the version of events favorable to her boyfriend believed—a boyfriend who otherwise faces probable incarceration.

Conversely, the Court cannot conclude that the testimony given by Government agents lacks credibility, although the versions of events related by various agents are not entirely consistent. There are some noticeable differences in the times agents assign to events during the course

of the evening (*e.g.* placing time of entry into Defendant's residence at approximately 7:30 (TR. 254), 8:00 (TR. 156), 8:30 (TR. 61), and 8:30 to 9:00 (TR. 233)). In view of the fact that the agents generally expressed uncertainty as to exact time (TR. 143, 233), the inconsistencies in their estimates do not rise to the level of contradictions which cast doubt on that testimony by agents which *is* consistent. The versions of events related by the agents are sufficiently consistent as to the nature and sequence of events as to be logically and reasonably reconcilable.

Both the Government and Defendant have suggested that credibility is a critical issue and that a determination of the validity of Government agents' entry into Defendant's home, of Defendant's arrest, and of the voluntariness of execution of the two consent forms at issue depends upon whether the facts as alleged by the Government or as alleged by the Defendant are to be believed (Doc. # 23, p. 19; Doc. # 25, p. 1). In this case, however, the issue is not whether testimony of Government agents is more credible than that of Defendant and Witness Gretchen Rentz, but rather whether the Government through credible testimony has made a showing sufficient to meet its burden to prove by a preponderance of the evidence the legality of the warrantless entry into Defendant's home and of his warrantless arrest, and the voluntariness of execution of the two consent forms. *Vale v. Louisiana,* 399 U.S. 30, 34, 90 S.Ct. 1969, 1971, 26 L.Ed.2d 409 (1970); *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968).

■ Because all evidence at issue was obtained in conjunction with and as a result of Defendant's arrest, the Court will address first Defendant's argument that the arrest was illegal for lack of an arrest warrant (Doc. # 24, p. 2). It is beyond dispute that the absence of an arrest warrant in a felony arrest based upon probable cause does not in and of itself constitute a violation of the fourth amendment's guaranty of the right to be free from unreasonable seizure, even where· it might have been possible to obtain such a warrant prior to arrest. *United States v. Watson,* 423 U.S. 411, 417, 96 S.Ct. 820, 824, 46 L.Ed.2d 598 (1976). Defendant does not dispute the existence of probable cause at the *time* of the arrest (Doc. # 24, p. 22). The Government contends that probable cause did not exist *until the time of the arrest,* after Doyle, the cooperating informant, had been heard making arrangements with Defendant for a transaction involving counterfeit currency (Doc. # 24, p. 22). Although it is certainly preferable to have a determination of probable cause made by a neutral and detached magistrate prior to the time an arrest is made, the timing of the arrest in this case was determined by circumstances which were not foreseen by the agents—circumstances which are central to an even more critical aspect of the reasonableness of Defendant's arrest, that being that the arrest was effected upon a warrantless entry into Defendant's home.

■ The Supreme Court has asserted that "at the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Payton v. New York,* 445 U.S. 573, 589–590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980) (quoting from *Silverman v. United States,* 365 U.S. 505, 511, 81 S.Ct. 679, 683, 5 L.Ed.2d 734 (1961)). The fourth amendment prohibits warrantless Government intrusion into a home, "absent exigent circumstances." *Payton,* 445 U.S. at 590, 100 S.Ct. at 1382. The burden is on the Government to demonstrate by a preponderance of the evidence exigency which is sufficient to justify the warrantless entry of a home. *Welsh v. Wisconsin,* 466 U.S. 740, 750, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984); *United States v. Morgan,* 743 F.2d 1158, 1162 (6th Cir.1984), *cert. denied,* 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985). A warrantless entry may be justified where there is an objectively reasonable basis to conclude that there is grave danger to the lives of law enforcement officers or others, to prevent escape of a fleeing felon, *Warden v. Hayden,* 387 U.S. 294, 299, 87 S.Ct. 1642, 1646, 18 L.Ed.2d 782 (1967), or where there

is an urgent need to prevent the destruction of evidence, *Schmerber v. California*, 384 U.S. 757, 770–71, 86 S.Ct. 1826, 1835–36, 16 L.Ed.2d 908 (1966). It has been noted that the need to prevent destruction of evidence increases where the nature of the evidence is such that it may be quickly and easily destroyed. *United States v. Sangineto–Miranda*, 859 F.2d 1501, 1511 (6th Cir.1988). In the case at bar there is evidence from the arresting agents that they feared that when Defendant fled up the stairs he might be "going for a gun" (TR. 256) and/or to destroy evidence (TR. 229). Their fears that Defendant might pose a grave danger to themselves and others were based on reports of the cooperating informant, who had known Defendant "for quite some time" and who had set up the transaction that evening (TR. 17). Furthermore, counterfeit currency is of such a nature that it could be relatively quickly and easily destroyed. Accordingly, this Court concludes that the warrantless entry and arrest of Defendant in his home were justified by the existence of probable cause and exigent circumstances.

■ A warrantless intrusion into a home must be "limited in scope and proportionate to the exigency excusing the warrant requirement." *United States v. Sangineto–Miranda*, 859 F.2d at 1513. *See also Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). The justified intrusion in the case at bar would be limited to a protective sweep to " 'secure' the premises to insure their safety and to prevent the loss or destruction of property." *United States v. Sangineto–Miranda* at 1513. Any search of Defendant's residence exceeding those limits would require either a search warrant or the voluntary consent of Defendant.

■ In this case, the Government contends that Defendant executed a consent to a search of his home, and a consent to speak (Doc. # 23, pp. 17, 19). The burden is on the Government to show from a totality of the surrounding circumstances, by a preponderance of the evidence, that consent was freely and voluntarily given. *Schneckloth v. Bustamonte*, 412 U.S. 218,

93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *see also Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

While the Court may question the wisdom of selecting a bathroom, with its door closed, as the location in which Defendant should be asked whether he was willing, freely and voluntarily, to execute the consent forms, the fact that Agent Calpin took Defendant to a bathroom to address those issues does not necessarily mandate a conclusion that coercion was used to obtain the consent; nor does the use of handcuffs on Defendant or the presence in Defendant's home of several visibly armed agents require such a conclusion. *McCall v. Dutton*, 863 F.2d 454 (6th Cir.1988). With respect to a consent to search, neither a failure to inform a defendant of a right to refuse consent, an assertion that a search warrant would be obtained (TR. 9), the absence of an attorney (TR. 20), nor a failure to apprise a defendant of his Miranda rights (TR. 23), as alleged by Defendant, necessarily constitutes coercion. *United States v. Kimball*, 741 F.2d 471 (1st Cir.1984) (assertion that officers would be sent to obtain warrant did not vitiate consent); *United States v. Calvente*, 722 F.2d 1019 (2nd Cir.1983) (realistic assurance by agent that search warrant can be obtained is not coercion); *United States v. Zolp*, 659 F.Supp. 692, 721 (D.N.J.1987) and cases cited therein (consent not invalid in absence of attorney, in absence of being informed of right to refuse, in absence of being apprised of Miranda rights).

■ If the Court had determined, after listening to Defendant and to Gretchen Rentz, that the testimony of these witnesses was entirely credible, their testimony as to the conduct of the Government agents generally, and Agent Calpin in particular, might be sufficient, in the aggregate, to demonstrate that consent was coerced. In this case, however, the issue is determined less by the sufficiency of Defendant's evidence of alleged coercion than by the insufficiency of the Government's evidence in meeting its "burden of proving that the

consent was, in fact, freely and voluntarily given." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973) (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968)).

It is the testimony of Agent Calpin that both consent forms were executed within a very few minutes of each other in the bathroom where Agent Calpin was alone with Defendant (TR. 3–8). The chronological account given at the hearing by Agent Calpin, beginning with entry into Defendant's residence at approximately 8:30 (TR. 61), is consistent with the time (8:41 P.M.) listed on the Consent to Speak Form (TR. 338), but is not supported *in toto* by the testimony of any other agent, including that of Agent Calpin himself at a prior hearing (TR. 97–107).

Although the testimony of Agent Flick and Agent Rogers, the agents whose signatures appear on the consent forms as witnesses, is consistent in estimating that Defendant was in the bathroom for only about five minutes before the Consent to Search Form was executed (TR. 131, 206), both estimated that agents entered the house at between 8:00 and 8:10 P.M. (TR. 156, 210), as Agent Calpin had testified at the earlier hearing (TR. 98)[1] at least half an hour before the execution time listed on the Consent to Speak Form. An 8:00 to 8:10 P.M. entry would suggest either that considerably more than five minutes was involved in obtaining Defendant's consent, which Defendant alleges (TR. 329–30, 335–38), or that the two forms were not executed at the same time, a scenario which is not supported by any testimony. Even if one accepts Agent Calpin's present testimony that entry occurred at approximately 8:30 (and although only Agent Calpin estimated entry at this time, Agent Cobb's estimate of an 8:30 to 9:00 P.M. entry might be considered supporting), which is consistent with Defendant's executing both consent forms after approximately five minutes in the bathroom, neither agent whose signature appears as witness can recall having

seen or signed the Consent to Speak Form at all (TR. 167, 220).

The Court can invent scenarios which would take into account the inconsistencies in testimony and, nevertheless, indicate the consent was freely and voluntarily given, but it is not the Court's function to do so. It is the Government's burden to prove, where it seeks to rely on a Defendant's consent to a search or to speak without the protections guaranteed by the Constitution, that consent was freely and voluntarily obtained. The exigent circumstances which rendered permissible certain intrusions on Defendant's constitutional rights—the warrantless entry into Defendant's residence and the warrantless arrest—dissipated as Defendant was taken into custody and the residence was secured. Subsequent circumstances, even if appropriately described as "not one hundred percent stable" (TR. 103), did not permit further questioning or search without the full protections of the Constitution—a warrant executed by a neutral and detached magistrate, the presence of an attorney, or a genuinely free and voluntary waiver—no matter how inconvenient the affording or documenting of those protections might be. Thus, although the agents' warrantless entry into Defendant's home and warrantless arrest were not unlawful, evidence obtained through subsequent search and from Defendant's statements is not admissible in that the Government has failed to meet its burden to show that the Consent to Search and Consent to Speak were executed voluntarily. Accordingly, this Court must conclude that the Motion to Suppress must be granted as to all evidence whose admissibility depends on the validity of the consent forms.

■ The Court notes, however, that in certain circumstances where law enforcement officials are lawfully in a private area, the warrantless, nonconsensual seizure of an item that comes within plain view of the officials may be reasonable. *Coolidge v. New Hampshire*, 403 U.S. 443, 465–71, 91 S.Ct. 2022, 2037–40, 29 L.Ed.2d

1. Defendant and witness Gretchen Rentz also testified to an 8:00 to 8:10 entry into the living area of Defendant's residence but an earlier entry into the foyer (Tr. 270–276, 322, 324).

564 (1971). Seizure is justified where it is immediately apparent to officials that they have evidence of such objects as weapons or contraband. Where the very nature of a container (such as a gun case) announces the contents therein, such that the owner can have no legitimate expectation of privacy in the contents once the container has been lawfully discovered, a warrantless search of that container may be reasonable. *Arkansas v. Sanders*, 442 U.S. 753, n. 13, 99 S.Ct. 2586, n. 13, 61 L.Ed.2d 235 (1979). With respect to the Motion to Suppress now before this Court, both parties have focused on the legality of the consent underlying the search, and have not addressed the applicability of the plain view exception to the discoveries made during the protective sweep of Defendant's residence, which took place prior to and independently of the search undertaken pursuant to the consent. The Court hereby grants the Government seven (7) days in which to brief this issue (and Defendant seven (7) days in which to respond) with particular attention to the following facts:

(1) In monitoring the conversation of Defendant and Doyle, Agent Flick overheard a discussion regarding counterfeit money which was located in a briefcase and which was to be put into a paper bag (TR. 124).

(2) The briefcase and bag and the contents were identified by Defendant as items in a commercial transaction intended to take place between Defendant and Doyle (TR. 124).

(3) A briefcase and paper bag were found together on the kitchen counter during the protective sweep of Defendant's residence (TR. 156).

(4) Agents discovered more than one briefcase in Defendant's residence (TR. 167).

(5) The briefcase and bag found in the kitchen were opened by Agent Flick, but not until the full search was executed pursuant to the consent form (TR. 168–172).

The parties are also directed to the following cases: *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *Robbins v. California*, 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981); *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987); *United States v. Williams*, 822 F.2d 1174 (D.C.Cir.1987); *United States v. Barrios–Moriera*, 872 F.2d 12 (2d Cir.1989).

In conclusion, this Court finds that the warrantless entry into Defendant's home and Defendant's warrantless arrest were not in violation of Defendant's fourth amendment rights, and, that although a failure to permit Defendant to contact his attorney would not in and of itself render a search of Defendant's home invalid, the Government has failed to meet its burden of proving that Defendant freely and voluntarily consented to the search or to waive his fifth amendment rights. The Motion to Suppress is granted as to all evidence whose admissibility depends on Defendant's consent to search or his consent to speak. Decision on the Motion is deferred as to any evidence which may fall into the plain-view exception with respect to the initial protective sweep of Defendant's home, and said motion is expressly deemed not at issue pending procedures outlined in this decision.

## SUPPLEMENTAL OPINION

On August 2, 1989, this Court filed its Decision and Entry (Doc. # 34) finding

that the warrantless entry in the Defendant's home and Defendant's warrantless arrest were not in violation of Defendant's fourth amendment rights, and, that although a failure to permit Defendant to contact his attorney would not in and of itself render a search of Defendant's home invalid, the Government has failed to meet its burden of proving that Defendant freely and voluntarily consented to the search or to waive his fifth amendment rights.

(Doc. # 34, p. 1332). This Court granted Defendant's Motion to Suppress (Doc. # 6) as to all evidence whose admissibility was dependent on Defendant's consent to search or his consent to speak but deferred

decision as to any evidence which might fall into the plain view exception with respect to the initial protective sweep of Defendant's home. The Court hereby supplements its August 2, 1989 decision to overrule Defendant's Motion to Suppress (Doc. # 6) as to the gun found in the master bedroom and the briefcase and paper bag found in the kitchen, and grants Defendant's Motion to Suppress as to the briefcase found in the master bedroom.

Defendant's Memorandum on the plain view exception to the search warrant requirement focuses upon Defendant's legal argument that his arrest and the initial sweep of his residence were invalid and challenges the factual allegations upon which that determination and determination of appropriate application of the plain view exception must be based (Doc. # 36).

■ This Court has already held that the testimony of Defendant and his corroborating witness, Gretchen Rentz, is not entirely credible (Doc. # 34, p. 1328) and does not wish to revisit either the factual determinations already made, based on the testimony which this Court concluded was most credible and reasonably consistent, *or* the issue of the validity of the arrest and protective sweep, which is dependent on those facts.[1] The Court determined, *inter alia*, that

> [i]n monitoring the conversation of Defendant and Doyle, Agent Flick overheard a discussion regarding counterfeit money which was located in a briefcase and which was to be put into a paper bag.... The briefcase and bag and the contents were identified by Defendant as items in a commercial transaction intended to take place between Defendant and Doyle.... A briefcase and paper bag were found together on the kitchen counter during the protective sweep of Defendant's residence.... The briefcase and bag found in the kitchen were opened by Agent Flick.

(Doc. # 34, p. 1332). The Government argues that under *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), based on these facts, Agent Flick had probable cause to search the briefcase and paper bag found on the kitchen counter during the protective sweep, and that these items and their contents are admissible (Doc. # 35, pp. 3–4). The Defendant offers no case law or legal reasoning to the contrary. Accordingly, based on the reasoning and citations set forth in the Government's Memorandum and in this Court's August 2, 1989, Decision (Doc. # 34, pp. 1331–32), this Court concludes that the briefcase and paper bag found in the kitchen, and their contents, are admissible.

■ The Government also contends that Officer Taylor and Agent Cobb *discovered* a gun in plain view when they entered the master bedroom during the protective sweep (Doc. # 35, p. 1). Officer Taylor specifically testifies to that effect (Tr. 258). His testimony is supported by Agent Cobb (Tr. 242), and testimony, including that from Defendant, that it was not actually *retrieved* until later (Tr. 184, 331), is not necessarily inconsistent and does not affect the admissibility of the gun as evidence. This Court concludes that the gun found in the master bedroom is admissible.

■ Finally, the Government contends that a second briefcase containing a visible counterfeit note was in plain view in the master bedroom (Doc. # 35, p. 4). Defendant appears to argue principally that the note was not visible, perhaps suggesting that agents did not have probable cause to search that briefcase, and that the consent forms, which this Court has already found invalid (Doc. # 34, pp. 1331–32), had not yet been signed (Doc. # 36, p. 5). It appears to the Court, however, that although the briefcase, and perhaps even the note, may have been in a location where they were plainly visible, testimony regarding their being seen is offered by Agent Flick (Tr. 170), who indicates that at that time, his actions were part of the search institut-

---

1. This Court has already addressed *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the single case cited by Defendant in his Memorandum on the plain view exception (Doc. # 36), and has found that the warrantless arrest in Defendant's home was justified by "exigent circumstances," as expressly authorized in *Payton*, at 590, 100 S.Ct. at 1382 (Doc. # 34, p. 1329). The case is otherwise inapplicable to the issue presently before the Court.

ed pursuant to the consent which this Court has held invalid (Doc. # 34, pp. 1331–32), *not* that he discovered the briefcase during the initial sweep. Absent affirmative evidence that the second briefcase was discovered in plain view when the discovering official was acting lawfully—that is, pursuant to the protective sweep, and not the search based on the invalid consent—this Court concludes that the second briefcase and the visible counterfeit note therein are not admissible.

In sum, this Court hereby supplements its Decision and Entry of August 2, 1989 (Doc. # 34) and grants Defendant's Motion to Suppress (Doc. # 6) as to all evidence whose admissibility depends on Defendant's consent to speak or consent to search, including the briefcase found in the master bedroom, *but* overrules Defendant's Motion to Suppress as to the briefcase and paper bag found in the kitchen and the gun in the master bedroom, whose admissibility is justified under the plain view exception to the warrant requirement.

The Government has filed a Motion seeking reconsideration of this Court's Decision and Entry of August 2, 1989, upon three grounds, to wit:

1. the Government has met its burden of proving, by the requisite preponderance of the evidence, that Defendant's consent was freely and voluntarily given;

2. that the evidence which this Court has ordered suppressed as based upon the allegedly invalid consent should be admissible under the inevitability of discovery by subsequent lawful means exception to the exclusionary rule as set forth in *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); and

3. that the evidence which this Court has ordered suppressed as based upon the allegedly invalid consent is admissible under the good faith exceptions to the exclusionary rule.

It is the Order of this Court that the Defendant file a memorandum contra the Government's Motion to Dismiss not later than the close of business on Monday, September 11, 1989. The Government will then be given until the close of business on Tuesday, September 19, 1989, within which to file any reply memorandum deemed necessary.

As soon as this Court has rendered a ruling on the Government's Motion for Reconsideration, a telephone conference call will be convened, between Court and counsel, in order to determine the status of and further procedures to be taken in this matter.