**UNITED STATES, Appellee,**

v.

**Sergeant Morris COCKERM, SSN 437–94–9282, United States Army, Appellant.**

**CM 441846.**

U. S. Army Court of Military Review.

23 March 1983.

Captain Peter R. Huntsman, JAGC, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Colonel William G. Eckhardt, JAGC, and Major Robert C. Rhodes, JAGC.

Captain Paul E. Jordan, JAGC, argued the cause for the appellee. With him on the brief were Colonel R.R. Boller, JAGC, Captain Kenneth H. Clevenger, JAGC, and Captain Patrick Flachs, JAGC.

Before FULTON, COHEN and NAUGHTON, Appellate Military Judges.

## OPINION OF THE COURT

COHEN, Judge:

Appellant was convicted, contrary to his pleas, of involuntary manslaughter and driving while intoxicated causing personal injury. He now contests, among other things, the admission at his court-martial of the results of alcohol tests conducted on his blood shortly after the automobile collision that led to the charges. Because of failures of proof at trial on this issue, we reverse for reasons set forth below.

Driving while intoxicated and in excess of the posted speed limit, appellant lost control of his car, causing it to hit the median barrier, flip over, and come to rest in the opposing lanes. Appellant was pinned inside. Shortly, thereafter, another car struck appellant's vehicle, turned over on its roof and skidded down the road, killing its driver and passenger. The driver of the next car to arrive at the scene called for

medical assistance, and the appellant was taken by German ambulance to the nearest American medical facility. A German prosecutor arrived at the accident scene after appellant had been removed by ambulance and asked that blood be drawn from appellant to be tested for alcohol content. This request was communicated to U.S. Army military police.

At the hospital, appellant signed a form consenting to the withdrawal of a blood sample, and a sample was taken less than two hours after the collision. The next day, half of the blood was given to German authorities who determined that it contained 3.01 milligrams per milliliter of alcohol. The remainder of the blood was sent to the Army hospital laboratory for toxicology testing. The tests revealed a blood alcohol level of 1.9 milligrams per milliliter.

At trial, defense counsel moved to suppress the results of the blood alcohol tests, arguing that the blood tested was drawn without authorization of a magistrate, without probable cause and exigent circumstances, and without the valid consent of appellant. Trial counsel opposed the motion and, by way of stipulation, offered evidence to prove that appellant's consent to withdrawal of his blood was voluntary. Trial counsel also argued, in the alternative, that American constitutional standards need not have been applied to the seizure of appellant's blood because it was performed at the instigation of German authorities and was, therefore, a "foreign search." *See* Mil.R.Evid. 311(c)(1). The military judge denied the motion, finding that appellant voluntarily consented to the withdrawal and that, in any event, the participation of American military personnel was so "functionary" that the entire procedure could be considered a foreign search.

■ A search or seizure conducted by a foreign government is not, of course, subject to our constitutional strictures. Evidence thereby obtained may, with certain limitations, be introduced at an American court-martial notwithstanding that it was obtained in a manner that would require its exclusion under our constitution had it been obtained by action of the United States or its agents. *United States v. Morrison,* 12 M.J. 272 (C.M.A.1982). A search or seizure which is conducted, instigated or participated in by American military personnel is not a foreign search. Mil.R.Evid. 311(c)(1). Government appellate counsel observe that the Military Rule of Evidence which embodies this latter principle was intended to prevent the use of foreign agents to conduct operations on behalf of American authorities for the purpose of evading application of constitutional standards. *See* Manual for Courts-Martial, United States, 1969 (Revised edition), Appendix 18 at 32–33 (1980). They argue that the seizure of appellant's blood at the instigation of German authorities is the exact opposite of the situation which the rule was designed to prevent. That is, the U.S. Army physician who drew the blood was merely an instrumentality of the German government; what might on its face appear to be an American seizure was actually a German one; and American participation was intended solely to mitigate the risk of greater injury to appellant which transfer to a German hospital for the taking of a blood sample would have entailed. *See United States v. DeLeo,* 5 U.S.C.M.A. 148, 17 C.M.R. 148 (1954).

■ We disagree with those conclusions because they are not supported by the evidence of record. The Government failed to prove that the American military personnel who withdrew appellant's blood were acting as agents of the Federal Republic of Germany. We have no doubt that a German prosectorial official who came to the scene of the accident after appellant had been removed to the hospital requested that a blood sample be taken and that this request was noted by the military police, but whether and when this was communicated to the American hospital authorities is not indicated by any evidence. Nor does the fact that a portion of the sample drawn was in fact turned over to German authorities necessarily demonstrate that the procedure was undertaken at their request in the first place. Moreover, the prosecution made no attempt to demonstrate the reasons why

American authorities also tested a blood sample. Granting many proper purposes therefor, including diagnostic purposes and the mitigation of physical harm to the appellant, we are left with the certainty only that the test results were used for criminal prosecution. This gives us no assurance that what was asserted to be only a foreign search was not "participated in" by United States authorities. Mil.R.Evid. 311(c). Under the circumstances, we must conclude that American constitutional and statutory standards apply.

■ The Government bears the burden of proving that the test results were not the product of an unlawful search or seizure. *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); Mil.R.Evid. 311(e). Since there was no authorization in the nature of a warrant for withdrawal of appellant's blood, it must come within one of the exceptions to the warrant requirement. *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). There is no evidence of exigent circumstances, and, at the trial, the Government only argued that appellant had consented.

■ The consent which will validate a search must be voluntary. Voluntariness is a question to be determined from all the circumstances. Mil.R.Evid. 314(e)(4). Valid consent must be shown by clear and convincing evidence. *Compare* Mil.R.Evid. 314(e)(5) *with* 311(e)(1).

■ The Government's evidence on the issue of consent consisted mainly of the stipulated testimony of the soldier whose function it was to seek consent and the attending physician, together with a comparison (by the military judge) of the signature on the consent form with that of appellant on his identification card.

Unfortunately, the soldier whose regular duties involved explaining the consent form could recall nothing of this transaction. He could only testify that he routinely read the form carefully to persons whose consent was sought and that he never would force anyone to consent. The issue, however, is not whether the injured appellant was forced to consent, but rather whether he knew what he was doing. The form contains no advice as to rights. Our confidence is not enhanced by the scrawled signature we see to have been initially placed in the space labeled "Signature of Witness," rather than in the space to be signed by the "Person to be Examined." Moreover, no further attempt appears to have been made to comply with command regulations concerning observations as to sobriety.

The stipulated testimony of the attending physician includes her observation that appellant appeared to be alert and oriented, but, on the other hand, also includes her specific comment that, because of trauma that included injuries to appellant's head, she could not state that he was capable of making any intelligent decisions including whether he was willing to consent to a blood alcohol test. In fact, she precluded the military police from questioning appellant for 24 hours because she did not want to risk aggravating his medical condition and she did not know whether, due to that condition, he was capable of giving intelligent answers to their questions.

Forgoing discussion of the question whether the results of the blood alcohol tests might themselves indicate that appellant was incapable of informed consent to the tests, we do not regard the evidence summarized above as clear and convincing evidence that the appellant, who had suffered head and other injuries in a major automobile accident that overturned and destroyed two cars, made a knowing and intelligent decision to consent to the seizure of his blood. Mil.R.Evid. 314(e)(5). The results obtained from alcohol tests made on the blood should not have been admitted. Because evidence of appellant's intoxication was central to the Government's theory of culpable negligence, the findings of guilty of both charges must be set aside.

The remaining assignments of error are without merit.

The findings of guilty and the sentence are set aside. A rehearing may be ordered

by the same or a different convening authority.

Senior Judge FULTON and Judge NAUGHTON concur.