**UNITED STATES of America,**

v.

**Carlo HERNANDEZ, Defendant.**

**No. 86 Crim. 099 (EW).**

United States District Court,
S.D. New York.

Feb. 24, 1986.

Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y. New York City, for the U.S.; Mark C. Hansen, of counsel.

Higgins & Viviani, New York City, for defendant; Arthur J. Viviani, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Defendant Carlo Hernandez is charged in a three-count indictment with conspiracy to use or traffic in one or more counterfeit credit cards,[1] using or trafficking in one or more unauthorized credit cards,[2] and possession of fifteen or more counterfeit or unauthorized credit cards.[3] Defendant moves to suppress credit cards seized at the time of his arrest on the ground that the police lacked probable cause to conduct the search that yielded the credit cards. A suppression hearing was held on February 20 and 21, 1986.[4]

On December 23, 1985, Hernandez and a friend named Brea were driving in Hernandez's father's car across the 207th Street bridge connecting Manhattan and the Bronx. Hernandez testified that earlier that day he and Brea used credit cards Hernandez had purchased from a man nicknamed El Gordito to buy items at Alexander's. The credit cards were in the car with them when they drove across the bridge.

As they approached a New York City Police Department drunk driving roadblock on the Manhattan side of the bridge, Brea was observed exiting the car by Officer Daniel Donovan. Donovan approached Brea to ask him where he was going. According to Donovan, whose testimony the Court finds credible, Brea claimed he was simply walking across the bridge and denied having exited from the car driven by Hernandez.

After Donovan noticed that the car lacked a front license plate and had a temporary paper license plate taped to the rear window, the car was signaled to pull off into a safe area on a sidestreet. Donovan testified that based on his experience as an officer assigned to the Manhattan North Task Force, he was aware that paper temporary license plates were sold in stores in the area to persons seeking to evade the requirement that their cars be registered and insured.

As Donovan approached the car from the rear, he observed Hernandez through the hatchback window stuffing something between the front seats of the car and looking into the rearview mirror. He noticed various items of merchandise on the rear seat, including a videocassette recorder, an electric razor and boxes of shoes. Donovan asked Hernandez to produce his driver's license, registration and insurance certificate. Donovan testified that Hernandez groped around in the darkened car for a few minutes, placing Donovan in fear that Hernandez might be looking for a weapon. When Hernandez was unable to produce any of these documents, Donovan asked Hernandez to identify himself. Hernandez replied that his name was Alberto Martinez and stated that he did not have a driver's license. Donovan then asked Hernandez to step out of the car, where he patted him down for possible weapons.

---

1. 18 U.S.C. § 1029(b)(2).

2. 18 U.S.C. § 1029(a)(2).

3. 18 U.S.C. § 1029(a)(3).

4. Defendant's motion to suppress statements made to federal agents between December 30, 1985 and January 6, 1986 is rendered moot by the government's representation on the record that it will not seek to introduce such statements at trial.

When Hernandez opened the car door to comply with the officer's request, the car's interior light went on, enabling Donovan to see two credit cards lying face up on the floor of the car. Donovan retrieved the two credit cards and, looking for possible weapons or contraband, searched the area between the seats where he had observed Hernandez placing something. He seized ten credit cards.

Defendant contends that Officer Donovan's search of the car was conducted without probable cause and therefore the twelve credit cards should be suppressed. Hernandez testified that all twelve credit cards were under the passenger's seat in the front of the car as he drove across the bridge and denied stuffing any credit cards between the seats of the car while waiting to pass through the roadblock. The Court finds that Hernandez was not a credible witness. Hernandez was evasive and gave inconsistent answers to questions posed by the government and the Court.

■ Probable cause is a "practical, non-technical conception." [5] Based on the "totality of the circumstances," [6] the Court concludes that Officer Donovan had probable cause to search the front of the car.

Donovan observed Brea leave the car shortly before it reached the roadblock; when he questioned Brea, Donovan received demonstrably false answers. He ob-

served Hernandez placing something between the seats of the car and acting furtively. In addition, Donovan saw two credit cards on the floor of the car and various goods on the back seat, all in plain view. Hernandez groped around the car while failing to produce his driver's license. These factors, combined with the absence of permanent license plates on the car and Hernandez's inability to produce a driver's license or the car's registration or insurance certificate, gave Donovan probable cause to believe the car might contain contraband or weapons.[7] While the New York Court of Appeals has held that a violation of the traffic laws by itself may not justify a search,[8] here there were sufficient factors independent of the traffic infraction to support a finding that Donovan had probable cause to conduct the search.[9] The fact that the search preceded the arrest does not warrant suppression of the credit cards since Donovan had probable cause to arrest Hernandez for driving without a driver's license before he conducted the search.[10]

Defendant's motion is denied.

The case is set down for trial on March 5, 1986, at 10:00 a.m.

So ordered.

---

**5.** *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). *See also Illinois v. Gates,* 462 U.S. 213, 231, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983); *United States v. Ginsberg,* 758 F.2d 823, 828 (2d Cir.1985).

**6.** *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983).

**7.** *See Colorado v. Bannister,* 449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980); *see also New York v. Belton,* 453 U.S. 454, 460–61, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981); *Arkansas v. Sanders,* 442 U.S. 753, 760–61, 99 S.Ct. 2586, 2591, 61 L.Ed.2d 235 (1979).

**8.** *See People v. Troiano,* 35 N.Y.2d 476, 363 N.Y.S.2d 943 (1974); *People v. Adams,* 32 N.Y.2d 451, 346 N.Y.S.2d 229, 299 N.E.2d 653 (1973); *People v. Marsh,* 20 N.Y.2d 98, 281 N.Y.S.2d 789, 228 N.E.2d 783 (1967).

**9.** *See People v. Belton,* 55 N.Y.2d 49, 54–55, 447 N.Y.S.2d 873, 876, 447 N.Y.S.2d 873, 432 N.E.2d 745 (1982).

**10.** *See United States v. Ricard,* 563 F.2d 45, 49 (2d Cir.1977), *cert. denied,* 435 U.S. 916, 98 S.Ct. 1471, 55 L.Ed.2d 507 (1978); *United States v. Jenkins,* 496 F.2d 57, 73 (2d Cir.1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1119, 43 L.Ed.2d 394 (1975); *United States v. Riggs,* 474 F.2d 699, 704 (2d Cir.), *cert. denied,* 414 U.S. 820, 94 S.Ct. 115, 38 L.Ed.2d 53 (1973). *Cf. Rawlings v. Kentucky,* 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980). Under New York law, the police have the authority to conduct a warrantless search incident to an arrest for a traffic violation. *See* N.Y.Veh. & Traf.Law § 155 (McKinney Supp.1986); N.Y.Crim.Proc.Law § 140.10 (McKinney 1981).