UNITED STATES of America, Plaintiff,

v.

Orthnell D. WILLIAMS, Defendant.

Crim. A. No. 89–424.

United States District Court,
District of Columbia.

Feb. 8, 1990.

Odessa F. Vincent, Asst. U.S. Atty., Washington, D.C., for U.S.

W. Gary Kohlman, Washington, D.C., for defendant.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This case is before the Court on defendant Orthnell D. Williams' motion to suppress evidence seized from his person and his property on October 3 and October 4,

1989. Defendant contends that the actions of the United States Park Police and the Richmond City, Virginia Police violated his constitutional rights. The Government opposes defendant's motion maintaining that neither defendant's encounter with the United States Park Police Officer on October 3, 1989, nor the Richmond City, Virginia Police Officer's decision to search defendant's baggage after having obtained a warrant on October 4, 1989, violated defendant's Fourth Amendment rights.

## FINDINGS OF FACT

United States Park Police Sergeant Thomas Moyer and Richmond City, Virginia Police Detective Richard Palmer testified for the government at a hearing held before the Court on January 29, 1990. After the defendant filed a supplemental motion to suppress, the Court held another hearing on February 5, 1990 at which Special Agent Robert S. Berton of the Immigration and Naturalization Service testified for the defendant and the defendant testified on his own behalf. At the second hearing the defendant also recalled Sgt. Moyer.

Sgt. Moyer testified that on October 3, 1989, he met with Assistant United States Attorney Paul Howes about a pending murder investigation in which two suspects had been apprehended and two suspects, including the person who allegedly acted as the "lookout" for the murder, were still at large. Sgt. Moyer testified that he had seen the "wanted flyer" with a composite drawing of the "lookout" suspect. *See* Government's Exhibit 1. The flyer described the suspect as a "Jamaican male, in his twenties, dark complexion, short, about 5'7" tall, fat, about 200 lbs, known as 'Butter.' This subject is known to sell crack in the area of Georgia Ave, N.W. Washington, D.C. and has been known in this city by the name John." Sgt. Moyer also testified that the suspect was known to travel between New York City, Washington, D.C., and Florida.

On the evening of October 3, 1989, Sgt. Moyer and Special Agent Berton were monitoring buses from New York City at the D.C. Trailways/Greyhound bus station as part of a drug interdiction program. According to Sgt. Moyer, at approximately 9:30 p.m. he observed the defendant, who greatly resembled the composite drawing of "Butter," come off a bus from New York City and walk through the lobby of the bus station to a hamburger stand. After purchasing food, the defendant walked back through the lobby and stood near the telephones.

Sgt. Moyer testified that he and Special Agent Berton approached the defendant and identified themselves as law enforcement officers. Sgt. Moyer explained to the defendant that they were part of a drug interdiction unit which routinely approached people coming from source cities for narcotics. Sgt. Moyer asked if he could talk with the defendant. Sgt. Moyer explained that he was interested in talking to the defendant because he strongly resembled a composite drawing of a murder suspect who was known to come from New York. Sgt. Moyer asked if he could see defendant's bus ticket and defendant complied. The ticket was in the name "Orthnell Williams" and was from New York to Orangesburg, South Carolina. Sgt. Moyer testified that Orangesburg, South Carolina was not considered a source or destination city for narcotics. The officers asked the defendant if he was a U.S. citizen and the defendant replied that he was born in Jamaica. Special Agent Berton then asked if the defendant was carrying his "green card" and the defendant replied that he was not.

In response to Sgt. Moyer's requests for identification, defendant produced a N.Y. temporary driver's license and a hospital identification from his wallet. Neither piece of identification contained a picture. Both the license and the hospital card identified defendant as Orthnell Williams. Because Sgt. Moyer was not satisfied with the non-photo i.d., he asked defendant for further identification. Sgt. Moyer testified that he was not satisfied with the identification that defendant had produced because in his 18 years of experience he had found that "Jamaican cases" often involved

very convincing examples of false identification.

At this point in the encounter, there was an announcement over a loudspeaker that defendant's bus was preparing to leave the station. Defendant told the two officers that he did not have much more time for conversation as he was about to miss his bus. Special Agent Berton testified that he then briefly left to go outside and retrieve his camera in order to take a picture of the defendant to be used to show witnesses in the murder investigation.[1] Sgt. Moyer remained with the defendant.

Because Sgt. Moyer was not convinced that the defendant had thus far produced valid identification, he asked the defendant to let him see his wallet which was in the defendant's hand before defendant left to catch his bus. Sgt. Moyer testified that he requested the wallet not because he hoped to find narcotics, but because he thought there may have been some piece of identification, a phone number or a name in the wallet that would help him to definitively identify the defendant and either prove him to be the murder suspect or show that he was not the person in the composite drawing.[2]

The defendant voluntarily tendered his wallet to Sgt. Moyer, who, upon opening the wallet, discovered four plastic bags containing a green leafy substance which he believed was marijuana and later field tested to be marijuana. At this point, Sgt. Moyer placed the defendant under arrest. Sgt. Moyer testified that it was in his discretion whether to make an arrest for possession of a small amount of marijuana. Sgt. Moyer testified that while it was his

understanding the U.S. Attorney's Office would decline to prosecute such a case, he nevertheless had discretion whether to arrest the defendant and in the exercise of his discretion decided to arrest the defendant because he wanted the opportunity to obtain further information about the defendant with respect to the on-going murder investigation.

After the arrest, while still at the bus station, Sgt. Moyer testified that he asked the defendant if he had any bags on the bus and the defendant replied that he did not. The defendant denied that while at the bus station he was asked whether he had luggage. I do not credit the defendant's testimony on this point. Sgt. Moyer then brought the defendant to the station house to book him on the possession charge. Sgt. Moyer explained to defendant that his arrest for possession of marijuana was a minor infraction and that it was unlikely the case would be prosecuted. He advised the defendant he probably would be released the next day when purportedly the identity question would have been resolved. At this point, at the station house, the defendant explained to Sgt. Moyer that he had lied about not having bags on the bus and asked for help in getting his bags off the bus. The defendant then gave a description of his luggage which consisted of a red bag and brown tweed bag with the name "WILLIAMS" written on the front. The defendant explained that one bag was located by his seat aboard the bus and the other bag was in the luggage compartment.

Special Agent Berton called the Virginia State Police and asked them to retrieve

---

**1.** At the first hearing, Sgt. Moyer, in response to a question from defense counsel, stated that no photograph was taken of the defendant while he was at the bus station. Sgt. Moyer later discovered he had been in error and promptly reported this fact to the Assistant U.S. Attorney in charge of the case who then provided the information to defense counsel.

**2.** The defendant has a version of what transpired that is quite different on certain points from that testified to by Sgt. Moyer. According to the defendant, while Special Agent Berton was absent, Sgt. Moyer asked him if he was carrying drugs. When the defendant responded

that he was not, the defendant testified that Sgt. Moyer then performed a pat down search. The defendant said that when Sgt. Moyer felt a bulge in his back pocket he asked him what it was. The defendant stated that he replied that it was his wallet and took it out of his pocket. According to the defendant, Sgt. Moyer held on to the wallet while Special Agent Berton then photographed him. The defendant further testified that only after the photograph had been taken did Sgt. Moyer then open the wallet. With respect to the contradicting version of events, I credit the testimony of Sgt. Moyer.

defendant's bags from the bus at its Richmond, Virginia stop. Sgt. Moyer testified that neither he nor Special Agent Berton requested that the Virginia police search defendant's bags. Indeed, Sgt. Moyer testified that had defendant's bags been retrieved in Washington, D.C., he would not have searched them without first obtaining a positive result from a canine test because he did not believe that he would have had probable cause for a search. Sgt. Moyer further testified that he did not learn that the defendant was not the suspect the D.C. Police had been searching for in the murder investigation until several days after the defendant's arrest.

Richmond City, Virginia Detective Richard Palmer testified that in the late evening of October 3, 1989, he learned that the Virginia State Police had forwarded the request to retrieve the bags to the Richmond City Police. Det. Palmer testified that he received information over a teletype from the U.S. Park Police, via the D.C. Police Department, which stated that the defendant had been charged with possession of marijuana and was a suspect in a murder case. Palmer also received information about the defendant's original denial of any luggage and his later recantatiion that he in fact possessed two pieces of luggage. According to Det. Palmer, the teletype also provided the defendant's bus ticket number and a description of the luggage.

Det. Palmer testified that the Richmond City Police Department could not store the luggage in its property room without knowing its contents. Det. Palmer testified that this was the policy for any item stored in the property room. Because the luggage could not be stored without an inventory of its contents, Det. Palmer decided that he should obtain a search warrant. Thus, on October 4, 1989, at approximately 3:45 a.m., Det. Palmer spoke to a Detective Smith of the U.S. Park Police in D.C. and explained that he would try to get a search warrant for the luggage. Det. Palmer testified that he had several sources for the information he had about the case: first, the teletype provided information; second, Det. Palmer's partner had obtained infor-

mation about the case from D.C.; and finally, Det. Palmer had spoken to Detective Smith directly. Det. Palmer was aware that the defendant had a prior drug conviction in New York and strongly resembled the composite drawing and description. Det. Palmer was provided with some of the details of the murder case under investigation.

On October 4, 1989, at 5:45 a.m., Det. Palmer applied for a search warrant to open defendant's luggage. In support of the search warrant Det. Palmer executed an affidavit. *See* Attachment to Government's Opposition. With respect to the material facts constituting probable cause, Det. Palmer stated:

On 10–03–89 at 9:30 p.m. Sgt. Moyer of the U.S. Park Police—a Eight year veteran of thier (sic) Vice Unit and presently assigned to a Narcotic Task Force observed a subject later identified as Orthnell D. Williams. Mr. Williams physical build and appearance strongly resembled that of a composite drawing of a murder suspect—referrrence (sic) the murder of Shardeen Britt. The composite described the suspect as a Jamaican male, 5'7", 200 lbs with an alias of "Butter". While Sgt. Moyer was conducting his investigation of the suspect, marijuana was found in his possession and he was arrested. A record check of this individual reveald (sic) a history of various drug charges. The suspect originally denied having any luggage at the time of his arrest. At 11:00 he stated that he had a brown tweed suitcase labled (sic) with his name and an Orangesburg, S.C. destination.

On October 4, 1989, at 5:50 a.m., the magistrate issued a search warrant. The property sought in the warrant was "Any pistol or revolver that may have been used in the commission of the murder of Shardeen Britt on 2–2–88. Any and all illicit narcotics under the controlled substance act." Det. Palmer, who executed the warrant, opened the defendant's luggage in the presence of the magistrate. Found in defendant's luggage were approximately 275.11 grams of cocaine base.

## CONCLUSIONS OF LAW

The defendant raises three issues in support of his motion to suppress physical evidence. First, defendant asserts that the initial stop by Sgt. Moyer was illegal and thus the fruits of that stop and search, including the marijuana and the drugs obtained by search warrant, must be suppressed. Second, defendant contends that his arrest was pretextual and, therefore, the fruits of that arrest, including the drugs obtained by search warrant, must be suppressed. Finally, defendant asserts that the search warrant obtained by the Richmond City Police was defective and improperly issued.

■ Sgt. Moyer initially questioned the defendant because he noticed that defendant strongly resembled the composite drawing of a murder suspect in an open investigation. Thus, based on the information he had seen in the "wanted flyer," Sgt. Moyer had a reasonable suspicion to approach and question the defendant. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Hensley*, 469 U.S. 221, 231–232, 105 S.Ct. 675, 681–682, 83 L.Ed.2d 604 (1985). As the Supreme Court has held, "where police have been unable to locate a person suspected of involvement in a past crime, the ability to briefly stop that person, ask questions, or check identification in the absence of probable cause promotes the strong government interest in solving crimes and bringing offenders to justice." *Hensley, supra* at 229, 105 S.Ct. at 680. Moreover, defendant told Sgt. Moyer that he was Jamaican and travelling from New York, thus establishing further similarities between himself and the murder suspect. The Court finds that under such circumstances it was reasonable for Sgt. Moyer to request further identification from the defendant.[3] The Court credits the testimony of Sgt. Moyer that the defendant was free to leave, that no pat down search was

performed, and, at Sgt. Moyer's request, the defendant voluntarily produced his wallet when Sgt. Moyer asked to see it.

Although Sgt. Moyer did not recall having taken a photograph of defendant when he first testified, the Court does not believe that this casts doubt on his testimony. Immediately after learning that his testimony concerning the photograph was incorrect, Sgt. Moyer informed the Assistant United States Attorney prosecuting the case of his error. Thus, the Court finds that Sgt. Moyer did not mean to mislead the Court. The Court finds that the initial police encounter with the defendant was lawful.

■ Sgt. Moyer's decision to arrest the defendant after finding four packages in his wallet that field-tested positive for marijuana was also lawful. Defendant's argument that the arrest was pretextual and, therefore, unlawful is without merit. Although Sgt. Moyer candidly testified that he would not ordinarily arrest someone for possession of such a small amount of marijuana, he certainly had the discretion to make such an arrest. Possession of marijuana, even a small amount consistent only with personal use, is a federal offense. *See* 21 U.S.C. § 844. Sgt. Moyer's decision to arrest the defendant for possession of marijuana and to allow the U.S. Attorney's Office to determine whether to prosecute the charge was a reasonable exercise of his discretion.

■ The Court also finds that the search warrant was valid and properly issued. Clearly, the circumstances of this case constituted probable cause for the issuance of a warrant. Defendant bore a marked physical resemblance to a murder suspect, answered questions in a manner consistent with the background of the suspect, had at least one prior drug conviction in New York, was found in possession of narcotics, and lied to the arresting officers about his

---

3. Defendant argues that because the officers had an opportunity to take his photograph, the request for further identification was unreasonable. The purpose of identification was to assist the police by allowing them to compare the information received from the defendant with that already in the local police, FBI, and other law enforcement files. The purpose of the photograph was to enable eyewitnesses to look at the photograph and determine whether the defendant was the person actually involved in the murder.

luggage.[4] Only when the defendant thought that he was soon to be released did he tell police of his luggage and ask for help in retrieving it. Although Sgt. Moyer testified that he, himself, would not have sought a warrant if a canine sniff test of the luggage had failed to yield a positive result, his testimony has no bearing on whether probable cause existed as a legal matter. Sgt. Moyer is to be commended for holding himself up to a stricter standard than is required by law; the officers who sought the warrant, however, should not be penalized for taking actions within the law. Indeed, Det. Palmer acted with appropriate care in first obtaining a warrant before he opened the luggage. *See Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).

■ There is a presumption of validity with respect to an affidavit supporting a search warrant. "In the absence of an allegation that a magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 926, 104 S.Ct. 3405, 3422, 82 L.Ed.2d 677 (1984). The defendant contends that Det. Palmer's affidavit was defective because it contains misleading information. In particular, the defendant points to the statement that the defendant had "a history of various drug charges." The defendant argues that since Det. Palmer was aware of only one previous misdemeanor conviction in addition to the arrest on the marijuana charge, the phrase was intentionally misleading.[5] The Court credits the testimony of Det. Palmer that he used the term "history of various drug charges" to refer to the two charges of which he was aware and not to mislead the magistrate. Defendant contends that the affidavit was

also misleading because it refers to the possibility that a murder weapon might be found without disclosing that the murder took place 20 months earlier. This contention is simply inaccurate; the affidavit expressly states that the date of the murder under investigation was February 2, 1988. *See* Attachment to Government's Opposition.

The Court finds that the defendant has failed to show that the Richmond City Police knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the warrant affidavit. *See Franks v. Delaware*, 438 U.S. 154, 155–156, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978). Moreover, even absent the phrase "history of various drug charges," the content of the affidavit would have supported a finding of probable cause. *Franks, supra* at 171–172, 98 S.Ct. at 2684; *United States v. Richardson*, 861 F.2d 291, 294 (D.C.Cir.1988), *cert. denied*, — U.S. ——, 109 S.Ct. 1325, 103 L.Ed.2d 593 (1989). Defendant's attack on the validity of the warrant must therefore fail. Accordingly, there is no basis on which to suppress the physical evidence.

An appropriate Order accompanies this Memorandum Opinion.

### ORDER

Upon consideration of defendant's motion to suppress evidence, the Government's opposition thereto and the hearing held before this court, and in accordance with the Court's opinion of this date, it is hereby

ORDERED that defendant's motion to suppress be and hereby is DENIED.

---

4. The Court credits the testimony of Sgt. Moyer in this regard. Defendant's version of events is simply not credible.

5. Although Det. Palmer was unaware of it at the time he swore out his affidavit, the defendant also had a second misdemeanor drug conviction.